No. 26013

**The People of the State of Colorado v. R. George Silvola**

(547 P.2d 1283)

Decided March 15, 1976.                    Rehearing denied April 19, 1976.

John P. Moore, Attorney General, John E. Bush, Deputy, James S. Russell, Assistant, for plaintiff-appellee.

Pferdesteller, Vondy, Horton & Worth, Fred J. Pferdesteller, Anthony L. Worth, for defendant-appellant.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

R. George Silvola was found guilty by a jury of one count of conspiracy to commit theft, five counts of theft-receiving, and one count of theft. The trial court ordered that the sentences imposed on the theft counts be served concurrently.

On this appeal, the defendant advances over ten contentions of error. None have merit as to the convictions on count one (conspiracy), count six (theft-receiving), and count seven (theft), and we therefore affirm the trial court's judgments on these counts. We reverse the convictions on counts two, three, four and five because of insufficiency of evidence to sustain them, and remand to the trial court for entry of a dismissal as to these counts.

By indictment, defendant Silvola was charged with participation for a period of over one year prior to February 5, 1970 in a theft ring involving aircraft and aircraft radios. At trial, the prosecution implicated defendant Silvola mainly through the testimony of Richard W. Davis and other accomplices who related the following facts. Silvola, an attorney, (now suspended), was hired in November 1968 to represent Richard W. Davis, who was being held in the Arapahoe County jail on an extradition warrant from California where he had been charged with aircraft theft. After Davis explained to defendant Silvola how he organized his accomplices to perpetrate aircraft thefts, Silvola persuaded him to remain in Colorado and to continue his theft operation after he got out of jail. After Davis was released in June 1969, he and Silvola began planning to obtain more stolen planes and parts in order to sell them through ads in various trade journals. In addition to helping Davis secure a headquarters for his operation in Colorado Springs, Silvola agreed to act as banker for the operation because Davis needed a stable cash flow to run his organization. Using various aliases, Davis would sell the stolen aircraft equipment, and by prior arrangement, bring the checks to Silvola. Silvola would then cash the checks on the credit of his trust account or deposit them at a Colorado Springs bank. Davis was thereby afforded a safe conduit for this money and a ready supply of cash.

## I.
### Sufficiency of the Evidence

Count one of the indictment charged Silvola with conspiring with Davis and others to commit theft and theft-receiving of aircraft and aircraft radios.[1] Silvola maintains that the only direct evidence of an agreement presented by the prosecution was Davis' testimony to the effect that Sil-

---

[1] C.R.S. 1963, 40-7-35. Now section 18-2-201, C.R.S. 1973.

vola offered to run the stolen aircraft equipment checks through his trust account to evade federal taxes. He argues that such evidence was insufficient to establish an agreement to commit a Colorado crime and, in any event, was insufficient because Davis, an admitted perjurer and criminal, was totally unreliable as a matter of law.

■ We disagree that the alleged unreliability of the Davis testimony involves a matter of law. Rather, it involves a determination by the jury of the weight to be given this testimony. Moreover, the specific testimony of Davis which defendant uses to support his other contention actually shows that federal tax evasion was not the only criminal purpose agreed upon. Davis testified that:

"We had problems — by 'we,' my organization was having *problems on getting rid of excess number of checks,* and I had discussed this with George, on how I could *process these checks and* keep the heat off of me from the IRS. . . . It was suggested by George Silvola at that time perhaps I use his trust account and other bank accounts that he had to run the stolen equipment checks through. . . . (Emphasis added.)

This testimony and especially other testimony by Davis showed that a major purpose for cashing the stolen equipment checks through Silvola's trust account was to provide ready cash for the expenses of the theft operations. Providing a means for laundering the money to evade taxes appears to have been only a secondary purpose.

Circumstantial evidence of an agreement also supported the conspiracy charge. For example, though Davis was not billed for any legal services, he and Silvola were in constant contact during the period Davis was re-organizing his men to steal planes and aircraft radios. Many checks were processed through Silvola's trust account. Silvola helped Davis rent a house from which Davis advertised and sold the stolen aircraft radios, and he was present at various meetings at which thefts were being planned and discussed by Davis and his gang of thieves.

■ Such evidence, when viewed in a light most favorable to the prosecution, amply supports a finding of an agreement, and thus a conspiracy, between Silvola and Davis to commit theft and theft-receiving. The criminal record and admitted prior perjury of Davis do not go to the admissibility of Davis' testimony but rather to the weight to be given it, which was properly left for the jury's determination.

■ On the other hand, with respect to theft-receiving, counts two, three, four and five, the prosecution failed to establish that the subject aircraft radios were stolen, an essential element of the crime of receiving stolen property.[2] The only indication of theft was the bare conclusion of Davis that the property was stolen. The evidence failed to establish the basis

---

[2] 1967 Perm. Supp., C.R.S. 1963, 40-5-2. This statute defining the crime of theft-receiving has since been amended. *See* section 18-4-410, C.R.S. 1973 (1975 Supp.).

for this conclusion. Nor did it disclose any of the underlying circumstances such as how, when, where or from whom these aircraft radios were stolen. Such a completely conclusory statement by a witness is insufficient when standing alone to prove theft or theft-receiving.

■ With respect to count six (theft-receiving), however, the owner of a stolen radio testified and gave a description and serial number of his aircraft radio, and where and when it was stolen. Another prosecution witness testified to buying an aircraft radio bearing that same serial number from Davis by means of a check which was processed through Silvola's trust account. Davis then confirmed that this radio was stolen and later purchased from him. Such evidence is sufficient to support the jury's verdict of guilty of count six (theft-receiving). From the evidence, it may be clearly inferred that defendant Silvola aided and abetted Davis in obtaining "control over any stolen thing of value" knowing it to be stolen.[3]

■ With regard to count seven (theft of an aircraft), the People presented the owner of the airplane who testified to its theft. The prosecution also offered evidence showing how Davis and his accomplices stole the airplane and how it was used as collateral for a bond to get Davis out of jail. When the plane was wrecked by the bonding company, the prosecution then proved that Silvola, knowing the plane to have been stolen, helped repurchase the plane which was then brought back to Colorado for repairs.[4] Such evidence was sufficient to sustain the guilty verdict on count seven because it showed that Silvola aided and abetted Davis in obtaining or exerting unauthorized control over another's property.[5]

## II.
## Sufficiency of the Indictment

■ Because of the insufficiency of the evidence to support counts two, three, four, and five, we do not address the question whether the indictment on those counts was sufficient to charge an offense. With regard to count six (theft-receiving), however, defendant argues that the indictment was defective because it failed to allege as an element of the offense the specific intent required for conviction. The indictment charged:

"That on or about the 4th day of December, 1969, in the County of El Paso, Colorado, R. GEORGE SILVOLA committed the crime of theft by unlawfully and feloniously obtaining control over aircraft parts, aircraft radios, and aircraft equipment belonging to BERNARD BAUTHAUER, stolen things of value with a total and combined value of more than One Hundred Dollars,. . . and knowing the same to have been stolen. . . [i]n vi-

---

[3] See 1967 Perm. Supp., C.R.S. 1963, 40-5-2(1)(b)(iv).

[4] Defendant claims that venue was improper because the stolen plane was taken to be repaired in Jefferson County and was never in El Paso County during the time of his alleged participation. However, he has waived the objection because it was raised for the first time on appeal. *People v. Jones*, 184 Colo. 96, 518 P.2d 819 (1974). *See also* Crim. P. 18(a) (1963).

[5] See 1967 Perm. Supp., C.R.S. 1963, 40-5-2. Now section 18-4-401, C.R.S. 1973 (1975 Supp.)

olation of Colorado Revised Statutes 1963 as amended, 40-5-2, Theft (Receiving). . . ."

In *People v. Ingersoll*, 181 Colo. 1, 506 P.2d 364 (1973), this court held that not every element of a crime must necessarily be charged, although the jury must be instructed as to the elements of the crime and the prosecution must prove all elements at trial. In particular, we held that specific intent need not be alleged in a theft charge because the defendant and the jury was sufficiently advised of the nature of the offense without it. *See also Edwards v. People*, 176 Colo. 478, 491 P.2d 566 (1971). We therefore hold that count six of the indictment is not fatally defective.

### III.
### Aiding and Abetting

■ Defendant also maintains that he could not have possibly aided and abetted Davis' receipt of stolen property because Davis' crime was complete before Silvola's participation. However, the prosecution's theory, which was proved at trial, was that Silvola knew the items were stolen and on this basis agreed to cash the checks as an integral part of the overall scheme to acquire and sell the stolen goods. Under this theory, Silvola could be properly tried and convicted as an aider and abettor to theft-receiving and thus, as a principal. C.R.S. 1963, 40-1-12 provides in pertinent part that

"[h]e who thus aids, abets or assists, advises or encourages, shall be deemed and considered as principal and punished accordingly."

### IV.
### Challenge of a Juror

Defendant urges reversal on the ground that the trial court improperly denied his challenge to a juror for cause after the juror stated upon voir dire examination that he had formed an opinion as to the defendant's guilt or innocence. Prior to denying this challenge for cause, the trial court carefully questioned the juror and satisfied itself that this juror would be able to determine the case on the evidence submitted and to put aside any pre-existing opinion. The juror was thereafter excused by the defendant's exercise of a preemptory challenge.

■ We do not reach the foregoing issue of whether the trial court abused its discretion by denying the challenge for cause because the defendant has failed to show that he was prejudiced by this alleged error. Defendant cites *Skeels v. People*, 145 Colo. 281, 358 P.2d 605 (1961), for the proposition that his rights were prejudiced because he had to use his last preemptory challenge. However, in *Skeels*, this court announced a two-fold test for determining prejudice as follows: (1) Did the defendant exercise all of his preemptory challenges? and, (2) Was the defendant deprived of the right to challenge other prospective jurors because he was forced to exhaust his preemptory challenges to excuse the earlier suspect juror? The defendant has failed to allege or show that the second factor

existed in this case. We therefore reject this contention as a basis for reversible error.

## V.
### Testimony of Defendant's Employees

Silvola also argues that reversible error occurred when the trial court allowed several of his law office employees to testify without his consent. He relies on the literal language of C.R.S. 1963, 154-1-7[6] to support his contention that an attorney has a privilege not to have his employees testify without his consent, even though the attorney's client (Davis) has waived the attorney-client privilege. C.R.S. 1963, 154-1-7(3) states:

"An attorney shall not be examined without the consent of his client, as to any communication made by the client to him, or his advice given thereon in the course of professional employment; nor shall an attorney's secretary, stenographer or clerk be examined without the consent of his employer concerning any fact, the knowledge of which he has acquired in such capacity."

We read the last clause concerning employees as referring to cases where the lawyer himself is unable to testify because of the attorney-client privilege. Consequently, the statute can only be reasonably interpreted as extending the privilege to an attorney's employees if the attorney is also so privileged. Once the attorney can no longer claim the privilege, he likewise can no longer prevent his employees from testifying. To interpret this statute otherwise would lead to anamolous results. Defendant can suggest no public policy, other than the avancement of his self-interest, that supports his interpretation.

Alteratively, where a statute would operate unjustly, or absurd consequences would result from a literal interpretation of terms and words used that would be contrary to its obvious and manifest purposes, the intention of the framers will prevail over such a literal interpretation. *People v. Driver*, 189 Colo. 276, 539 P.2d 1248 (1975). The legislative intent behind this provision was to protect the client and not the attorney. *Mauro v. Tracy*, 152 Colo. 106, 380 P.2d 570 (1963); *Fearnley v. Fearnley*, 44 Colo. 417, 98 P. 819 (1908); and *Denver Tramway Co. v. Owens*, 20 Colo. 107, 36 P. 848 (1894). Silvola cannot therefore invoke this statute to protect himself after his client waived the attorney-client privilege as he did in this case.

The defendant's other contentions are wholly without merit and require no discussion.

\* \* \*

Judgment affirmed as to counts one, six and seven. As to counts two, three, four, and five, the judgment is reversed, and this cause is remanded

---

[6] Now section 13-90-107, C.R.S. 1973.

with directions to dismiss these charges.

MR. JUSTICE DAY does not participate.

MR. JUSTICE GROVES concurs in part, dissents in part, and concurs in the result in part.

MR. JUSTICE GROVES concurring in part, dissenting in part and concurring in the result in part.

I dissent as to the affirmance of the conviction under count six for the reason that I do not think the evidence sufficiently links the defendant with the article stolen.

I concur in the result in the affirmance of the conviction under count seven.

I concur in the remainder of the majority opinion.