**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Bernie MAES, Defendant-Appellant.**

**No. 78–991.**

Colorado Court of Appeals, Division III.

Dec. 13, 1979.

Rehearing Denied Jan. 4, 1980.

Certiorari Denied March 10, 1980.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Nathan B. Coats, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Philip R. Cockerville, Sp. Deputy Public Defender, Denver, for defendant-appellant.

STERNBERG, Judge.

Following a jury trial defendant Bernie Maes was convicted of theft. He appeals and we affirm.

At approximately 4:00 a. m. on March 11, 1978, a gun shop in Windsor, Colorado, was burglarized and a number of weapons were stolen. Some three hours later Maes and Andres Alvarado were arrested near Castle Rock, Colorado. They were traveling in an automobile driven by Alvarado which was pulled over for weaving by a State Patrol officer. Upon approaching the vehicle, the officer noticed two rifles on the dashboard and five shotguns on the backseat and floor, some of which had white price tags attached. The officer arrested Maes and Alvarado, both of whom appeared to be intoxicated, and seized the weapons. The weapons later proved to be those stolen from the gun shop in Windsor.

Maes and Alvarado were charged with first degree burglary, theft, and conspiracy to commit first degree burglary. At the preliminary hearing, the burglary charge was reduced to second degree burglary. The conspiracy charge, however, was not reduced. Alvarado's motion for severance was granted and Maes was tried alone. At the close of trial, the conspiracy charge was dismissed. The jury acquitted Maes on the burglary charge but found him guilty of theft.

Maes' first contention of error is that the evidence was insufficient to support a conviction of theft. Specifically, he argues that because he was merely a passenger in Alvarado's car, exercising no actual control over the weapons, he could not be found guilty of theft and his motion for acquittal should have been granted. We do not agree.

In reviewing an assertion that the evidence at trial was insufficient, the test to be applied is whether the evidence when viewed as a whole in the light most favorable to the prosecution, is "substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973).

■ Contrary to Maes' argument, whether he was actually seen in physical contact with the stolen goods is not dispositive of the issue of control for purposes of the theft statute, § 18–4–401, C.R.S.1973 (1978 Repl.Vol. 8). Possession need not be sole to constitute the requisite control over the stolen goods. *People v. Haggart*, 188 Colo. 164, 533 P.2d 488 (1975); *Martinez v. People,* 162 Colo. 195, 425 P.2d 299 (1967). Thus, the fact that the goods were found in Alvarado's automobile does not necessarily relieve Maes of criminal culpability. The question of control over the stolen property must be determined from the evidence as a whole.

There was evidence at trial placing Maes and Alvarado together on the night of the burglary, at a time prior to the burglary. Expert evidence was presented which indicated that the tires of the car in which Maes was riding matched tire tracks found at the scene of the crime. Two of the weapons found in the car were on the dashboard directly in front of Maes, and there were price tags on at least some of the other weapons which were recovered; thus, a jury could reasonably conclude Maes was cognizant of the stolen weapons.

■ Over defendant's objection the trial court instructed the jury, in accordance with Colorado law, that, exclusive, unexplained possession of recently stolen property raises an inference that the defendant stole that property. Applying this inference in conjunction with the other evidence presented at trial, we conclude that there was a basis for the jury to find that Maes was guilty of theft.

Maes contends, however, that the instruction in question, which permitted the jury to infer guilt of either theft or burglary, if recent, exclusive, and unexplained possession of the stolen property was established beyond a reasonable doubt, was itself defective. We do not agree.

Recently, in *Wells v. People*, Colo., 592 P.2d 1321 (1979), the Supreme Court expressed concern over an instruction similar to that at issue here used in a robbery case, and prohibited future use of that instruction. The court in *Wells* recommended a model instruction designated for prospective application, but declined to disturb existing cases approving the giving of exclusive, and unexplained recent possession instructions. We conclude that the court, in not making its decision retroactive, no more precludes a pre-*Wells* defendant from asserting that a recent possession instruction should not have been given in his case, than it requires reversal of all cases in which such instruction was given. Rather, a case-by-case determination must be made where recent possession instructions were given in cases tried prior to the *Wells* decision. Indeed, to deny a defendant the right to attack such an instruction would be to impinge upon his right to due process of law. *Cf. R. Aldisert, The Judicial Process*, p. 890, et seq. (1976 ed.).

The most significant concern raised by the court in *Wells*, and by Maes here, is the impact the instruction has on the People's burden of proving all elements of the crime charged beyond a reasonable doubt, and upon the defendant's constitutional right to remain silent. The instruction proposed in *Wells*, by expanding the usual instruction to more specifically address these areas, is directed at remedying the possibility of jury confusion as to the People's obligation and the defendant's rights.

We are aware of the dangers of jury confusion attendant to an instruction which permits an inference of guilt to be drawn from possession of stolen property. However, the inference merely allows the jury to apply the natural probative value of the evidence, and does not itself derogate from the dictates of substantial fairness. In recognition of this, the court in *Wells* expressly approved the inference of guilt which may be drawn, and refused to disturb the holding of *People v. McClendon*, 188 Colo. 140, 533 P.2d 923 (1975), a burglary case, that the protective ambit of due process was not violated by a recent possession instruction. Significantly, in *McClendon* the court stated that the defendant is not forced by the instruction to take the stand, but could rely instead upon evidence independent of his own testimony to explain his possession of stolen property.

An important distinction exists between use of the instruction in robbery prosecutions, such as *Wells*, and burglary or theft prosecutions, such as *McClendon* and the instant case. The application of the instruction to burglary and theft cases is less pernicious than its application to robbery cases where the additional element of force, threats, or intimidation must be established. Section 18–4–301, C.R.S.1973 (1978 Repl. Vol. 8). Permitting an inference of guilt of robbery to be drawn in light of the additional element which must be established by the People creates a substantial threat of jury confusion as to the proof required for conviction. There is a significantly more tenuous connection between possession of recently stolen property and robbery than between such possession and burglary or

theft. Indeed, there is a logical and tenacious link between possession of stolen property and theft, the crime for which Maes was convicted.

■ The instruction here permitted the jury to afford "the evidence its natural probative force, which the jury is free to accept or reject." *Wells v. People, supra*, 592 P.2d 1325. It is apparent that the jury did so and was not confused by the instruction; Maes was charged with both burglary and theft but was convicted only of theft, a verdict supported by the evidence.

Maes also asserts that the trial court erred in admitting an out-of-court statement co-defendant Alvarado made to his wife and which was elicited from her. It was admitted under the co-conspirator exception to the hearsay rule. The testimony attempted to exonerate the two, but placed Maes and Alvarado together approximately two hours before the burglary and indicated Alvarado's intention to take Maes to Colorado Springs. Such statements may be admitted as an exception to the hearsay rule only if there is independent evidence of a conspiracy, *People v. Schlepp*, 184 Colo. 28, 518 P.2d 824 (1974). We do not agree with Maes' contention that there was a lack of independent evidence to prove a conspiracy and that even if a conspiracy existed, the statement was made prior thereto.

Independent evidence was presented placing Maes and Alvarado together on the night of the crime. The tire tracks plus their possession of the stolen weapons approximately three hours after the burglary linked the parties to the crime. The fact that the weapons were in plain view, some with price tags attached, reasonably implies that both parties had knowledge that the weapons were stolen. That Maes and Alvarado were transporting the weapons away from Windsor and towards Colorado Springs shortly after the crime reasonably suggests a plan to steal and dispose of the weapons. Alvarado's statement was made only two hours prior to the burglary and corresponded with events that subsequently occurred.

██ Existence of the agreement or assent of minds necessary to constitute a conspiracy need not be proved directly, but may be inferred from the evidence presented. *Abeyta v. People*, 156 Colo. 440, 400 P.2d 431 (1965). Here, there was evidence from which it could reasonably be concluded that Maes and Alvarado acted with the necessary concert of action and agreement to constitute a conspiracy, and that the statement made by Alvarado to his wife was in furtherance of that conspiracy and during the pendency thereof.

Maes next asserts that the prosecutor's comment to the jury not to search for reasonable doubt, his addressing a juror personally, his expressing the People's belief as to what the evidence showed, and his comment that there was no explanation with respect to possession of the stolen weapons were cumulatively so prejudicial that Maes' motion for a new trial should have been granted. Again, we disagree.

██ Whether a new trial should be granted for alleged prejudicial statements in closing argument is within the discretion of the trial court. *People v. Pesis*, 189 Colo. 52, 536 P.2d 824 (1975). Here, the contemporaneous objections of defense counsel were sustained, and the jury was properly instructed as to the People's burden of proof and the evidence upon which the verdict could properly be based. We conclude that the statements made by the prosecutor were neither sufficiently material nor misleading to constitute reversible error. *See People v. Pesis, supra.*

██ Finally, Maes contends that the trial court erred in denying his motion for a new trial based upon a statement and gesture allegedly made by the trial judge indicating that Maes was deserving of punishment. No contemporaneous objection was made by defense counsel, and no objection was made the following morning when the attorneys were in chambers to discuss jury instructions. The issue was raised in defendant's motion for new trial and was then discussed by the judge and the attorneys. The record does not reflect the statement allegedly made by the judge, and, although there is some indication that the judge may have shrugged and looked in the direction of Maes after warning the jury that they might be punished if they discussed the case, there is no clear indication of what actually transpired. Based on the state of the record, we cannot say that Maes' right to a fair trial was prejudiced.

The judgment is affirmed.

SMITH and VAN CISE, JJ., concur.