**The PEOPLE of the State of Colorado,**
**Plaintiff-Appellee,**

v.

**Robert John RUSSO, also known as**
**Andres Antonio Valdez,**
**Defendant-Appellant.**

**No. 81CA0267.**

Colorado Court of Appeals,
Div. II.

Sept. 8, 1983.

Rehearing Denied Oct. 6, 1983.

Certiorari Granted Jan. 16, 1984.

G.F. Sandstrom, Dist. Atty., Patrick J. Delaney, Deputy Dist. Atty., Pueblo, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Linda Hotes, Deputy State Public Defender, Denver, for defendant-appellant.

TURSI, Judge.

Defendant appeals his convictions of first degree sexual assault, second degree kidnapping, violent crime, and habitual criminality. We reverse and remand for a new trial.

The record reveals that shortly after midnight, three women were leaving a bar in Pueblo when a man approached them with a gun and ordered them into their car. Eventually, the man parked the car, ordered the three to undress, and sexually assaulted one of them. Officers in a sheriff's department vehicle approached the car to investigate and arrested defendant. At the time of his arrest, he told the officers his name was John Russo, although the officers later learned that his real name was Andres Valdez.

Defendant was charged under both his real name and his alias with one count of

first degree sexual assault, three counts of second degree kidnapping, three counts of being a habitual criminal, and commission of a violent crime. During voir dire and throughout the trial, the prosecution referred to the defendant by both his real name and his alias.

During voir dire, defense counsel challenged, for cause, a journalist who had read the police reports, knew six of the police officers, and had written a story on the case for a Pueblo newspaper. The challenge for cause was denied. Defense counsel did not use a peremptory challenge on this juror, but he did subsequently use his final peremptory challenge on another juror.

After close of evidence, the jury was instructed and was given separate verdict forms which required it to find the defendant guilty or not guilty of the substantive offenses of second degree kidnapping and first degree sexual assault and, if the verdict was guilty, to find whether the defendant had used a deadly weapon in the commission of that offense. The jury found defendant guilty of all counts and further found that he had used a deadly weapon in the commission of each offense.

A separate hearing was then held on the habitual criminal counts. The jury convicted defendant on all three habitual criminal counts. Defendant was sentenced to four consecutive life sentences.

## I.

Defendant first argues that it was reversible error to deny his challenge for cause to the journalist. We agree.

■■■ Although the trial court is vested with broad discretion in determining whether to grant challenges for cause, *People v. McCrary,* 190 Colo. 538, 549 P.2d 1320 (1976), appellate courts must not "abdicate their responsibility to ensure that the requirements of fairness are fulfilled." *Morgan v. People,* 624 P.2d 1331 (Colo.1981). The "constitutional standard of fairness requires that a defendant have a panel of

impartial and unbiased jurors." *People v. McCrary, supra.*

■■■ Here, the journalist testified that he had read the police reports as background information for his story. The facts reported in this story became the subject of controversy, and the journalist had occasion to speak to the manager of the bar and reread the police reports "to find out if the complaint was justified." Also, he confessed on voir dire that he knew six of the fourteen prosecution witnesses listed in the information. Although the journalist claimed that he could set aside his previous knowledge of the case, such claims by a juror are not dispositive as to whether a juror is biased. *People v. McCrary, supra.* Just as in *Nailor v. People,* 200 Colo. 30, 612 P.2d 79 (1980), we feel that "[j]ustice would have been served by excusing this potential juror."

The People argue, however, that it was not reversible error to refuse the challenge for cause because, at the time the journalist was challenged, the defense had at least one peremptory challenge remaining. This argument is unpersuasive.

■■■ If it is error to refuse a challenge for cause to a potential juror, and the party challenging that juror is subsequently forced to exhaust all of his peremptory challenges, the error is prejudicial. *See People v. Maes,* 43 Colo.App. 426, 609 P.2d 1105 (1980). *See also Nailor v. People, supra.* We know of no principle of law which requires the defendant to exhaust his remaining peremptory on the juror who was not removed for cause. Any such requirement would result in denying a defendant the right to use his peremptory challenges as he sees fit.

■■■ Here, the defendant was forced to exhaust his one remaining peremptory on another juror; thus, the journalist ultimately was allowed to sit on the jury and, we note, was elected foreman. Under these circumstances, we hold the denial of the challenge for cause to the journalist to be reversible error, and we remand for a new trial.

Because two other issues presented to this court may arise on retrial, we discuss those issues here as well.

## II.

Defendant argues that the prosecution's references to his alias were improper. We disagree.

■■■ If the People wish to introduce the defendant's use of aliases at trial, it must "offer evidence which shows the relevance of the alias to the crime charged." *People v. De Herrera*, 647 P.2d 241 (Colo. App.1981). Here, the prosecution showed that the defendant provided the alias rather than his real name at the time of the arrest, which may have been relevant to prove either that he was attempting to evade arrest or that he was attempting to avoid prosecution as a habitual offender. Moreover, because defendant was eventually charged as an habitual offender, it was necessary that the information filed against the defendant contain both his real name and his alias because his previous convictions had been under both names. Thus, in this case, the use of defendant's alias was proven to be relevant, and it was proper for the prosecution to refer to it during the trial.

## III.

Defendant also contends that the trial court committed plain error in failing to instruct the jury that the charge of violent crime must be established by proof beyond a reasonable doubt. We agree.

■■■ Although the statute requiring mandatory sentencing for violent crime provides that the charge be contained in a separate count, § 16–11–309(4), C.R.S. 1973 (1978 Repl. Vol. 8), it does not create a separate substantive offense. *Brown v. District Court*, 194 Colo. 45, 569 P.2d 1390 (1977). Rather, like charges under the habitual criminal statute, it provides for enhancement of punishment under specific circumstances. *Brown v. District Court, supra.* And, similar to charges under the habitual criminal statute, the People bear the burden of proving the material elements of violent crime beyond a reasonable doubt. *See People v. Mascarenas*, 666 P.2d 101 (Colo.1983).

■■■ The People argue that the mere inclusion of an interrogatory on use of a deadly weapon in the verdict form is sufficient to set up that charge as an element of each of the substantive charges. We disagree. The trial court did not instruct on crime of violence nor was use of a deadly weapon a material element in the substantive charges.

The matter here was tried after *People v. Grable*, 43 Colo.App. 518, 611 P.2d 588 (1980), but prior to *People v. Swanson*, 638 P.2d 45 (Colo.1980). Therefore, in retrial, the trial court must instruct the jury that if in the commission of specified underlying substantive crimes, defendant used, or possessed and threatened to use, a deadly weapon, he has committed a crime of violence. Further, the jury is to be instructed that crimes of violence must be established by proof beyond a reasonable doubt. Whether the People have met this burden may be established through use of an interrogatory. *People v. Grable, supra.*

The judgment is reversed and the cause is remanded with directions to grant defendant a new trial to be conducted consistent with the views expressed in this opinion.

PIERCE, J., concurs.

BERMAN, J., concurs in part and dissents in part.

BERMAN, Judge, concurring in part and dissenting in part.

I concur with the majority opinion for parts I and II, but I respectfully dissent to part III.

The jury here was given the following model instruction:

"The burden of proof is upon the People to prove to the satisfaction of the jury beyond a reasonable doubt the existence of all the elements necessary to constitute the crime charged.

Reasonable doubt means a doubt based upon reason and common sense which arises from a fair and rational consideration of all the evidence, or the lack of evidence, in the case. It is a doubt which is not a vague, speculative or imaginary doubt, but such a doubt as would cause reasonable men to hesitate to act in matters of importance to themselves.

If you find from the evidence that each and every element has been proven beyond a reasonable doubt, you will find the defendant guilty. If you find from the evidence that the People have failed to prove any one or more of the elements beyond a reasonable doubt you will find the defendant not guilty."

This instruction was given to the jury at the same time as the verdict forms for each substantive offense and interrogatories regarding use of a deadly weapon under the "violent crime" statute. Section 16–11–309, C.R.S.1973 (1978 Repl. Vol. 8). Thus, I must assume that the jury applied the reasonable doubt standard contained in the above instruction to the finding regarding use of a deadly weapon.

This case can be distinguished from those which construe the habitual criminal statute, *see, e.g., People v. Mascarenas*, 666 P.2d 101 (Colo.1983), because, unlike here, habitual criminal charges are tried in a separate proceeding. *People v. Chavez*, 632 P.2d 574 (Colo.1981). Although after trial of the substantive offenses, the jury is given a burden of proof instruction, the jury would not necessarily apply that instruction to a separate habitual criminal proceeding after which separate instructions are given. Thus, although a renewed instruction regarding the burden of proof may be necessary following a habitual criminal trial, a separate burden of proof instruction is not necessary for the finding regarding use of a deadly weapon.