The PEOPLE of the State of
Colorado, Petitioner,

v.

Robert John RUSSO, a/k/a Andres
Antonio Valdez, Respondent.

No. 83SC389.

Supreme Court of Colorado,
En Banc.

Jan. 21, 1986.

As Modified on Denial of Rehearing
Feb. 10, 1986.

violence, and the judgment and life sentence imposed for habitual criminality. In ordering a new trial, the court of appeals held that the trial court abused its discretion in denying the defendant's challenge for cause of a prospective juror and also erred in failing to instruct the jury on the elements and burden of proof applicable to the crime of violence charge. We conclude that the court of appeals erred in holding that the trial court abused its discretion in denying the defendant's causal challenge to the juror. We are also satisfied that, although the trial court erred in failing to correctly instruct the jury on the crime of violence charge, the error was harmless under the circumstances of this case and does not affect the adjudication of the defendant as a habitual criminal or the life sentence imposed pursuant to that adjudication. We therefore reverse the judgment of the court of appeals.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and John Daniel Dailey, Asst. Atty. Gen. Denver, for petitioner.

David F. Vela, Colorado State Public Defender, and Linda Hotes, Deputy State Public Defender, Brighton, for respondent.

QUINN, Chief Justice.

We granted certiorari to review the decision of the court of appeals in *People v. Russo*, 677 P.2d 386 (Colo.App.1983), which reversed the defendant's conviction for second degree kidnapping, and first degree sexual assault; the jury's special finding that the defendant committed a crime of

## I.

The defendant, Robert John Russo, was charged with three counts of second degree kidnapping involving three separate women,[1] one count of first degree sexual assault committed against one of the kidnapped victims,[2] the commission of a crime of violence by using a deadly weapon during the commission of the kidnapping and sexual assault crimes,[3] and habitual criminality based on three prior felony convictions.[4] The charges arose out of an incident in Pueblo, Colorado on August 12, 1979, in which the defendant ordered three women at gun point into their car as they were leaving a discotheque where they had been dancing and, after compelling them to

1. § 18–3–302, 8 C.R.S. (1978). On the date of the offense, second degree kidnapping, a class 4 felony, was punishable by a presumptive sentence of two to four years plus one year of parole. § 18–1–105(1)(a)(I), 8 C.R.S. (1985 Supp.).

2. § 18–3–402, 8 C.R.S. (1978). First degree sexual assault was a class 3 felony on the date of the offense and carried a presumptive sentence of four to eight years plus one year of parole, § 18–1–105(1)(a)(I), 8 C.R.S. (1985 Supp.), unless the actor was armed with a deadly weapon and

used the weapon to cause submission of the victim, in which case the crime was a class 2 felony, § 18–3–402(2), 8 C.R.S. (1978), which carried a presumptive sentence of eight to twelve years plus one year of parole. § 18–1–105(1)(a)(I), 8 C.R.S. (1985 Supp.).

3. Ch. 157, sec. 9, § 16–11–309(1), 1979 Colo. Sess.Laws 664, 666.

4. § 16–13–101(2), 8 C.R.S. (1985 Supp.).

drive to a parking lot, committed first degree sexual assault against one of the victims.

During jury selection the defendant challenged for cause a prospective juror who worked as a part-time reporter for a Pueblo newspaper. The juror stated that he had written a story about the incident based on a police report, but remembered very little about the matter. He further stated that his prior reading of the police report was limited to ascertaining whether, in response to a complaint by the discotheque manager about the newspaper's reporting of the matter, the incident had begun inside rather than outside the discotheque. The juror stated the following in response to defense counsel's question about what he knew of the prior story:

I don't recall the story at all; all I can remember about it is that there were three women who claim that they were kidnapped and sexually assaulted. The problem I had with the manager of the disco, is that in my original story I said the incident began inside the disco and the gentleman said that if there was an incident it began in the parking lot or outside somewhere, and so I went back to the original police report and an officer said it began inside the disco. That's all I remember. I wracked my brains and I just can't remember any more about the incident.

The juror also stated that he knew several sheriff's officers listed as prosecution witnesses but would not tend to treat their testimony any differently than the testimony of any other witness. Defense counsel nonetheless challenged the juror for cause, stating to the court as follows: "Your Honor, on the basis of his unusual position, in that the other jurors would not have access to information he had access to, we would challenge this juror for cause."

Prior to ruling on the challenge for cause, the court conducted the following questioning of the juror:

THE COURT: Would you be willing and able to set aside anything you read in the report?

JUROR NO. 1: Yes, I would.

THE COURT: And the complaint that was made that you have knowledge of?

JUROR NO. 1: Yes, I would.

THE COURT: Would you base your verdict solely on what goes on in the courtroom: the testimony and the evidence presented in the course of this trial?

JUROR NO. 1: Yes, I would.

THE COURT: And the instructions given to you by the Court on the law applicable in this case?

JUROR NO. 1: Yes, sir.

THE COURT: You feel you would base your verdict solely on the evidence and the instructions given to you by the Court, is that correct?

JUROR NO. 1: Yes, I do.

THE COURT: You made some statement to the effect that there might be some difference in the testimony from which you read in the report, as to where this incident occurred. What evidence will you base your verdict on: the evidence that you hear in court, even though it's contradictory to what was contained in the report, or on what you remember from having read the report?

JUROR NO. 1: My memory of the report is fairly vague, but anyway I would base my final decision on what I heard in court.

The court thereupon denied the defendant's challenge for cause. Although the defendant had one peremptory challenge remaining, he elected to exercise his remaining challenge not against the newspaper reporter but against another prospective juror, with the result that the newspaper reporter remained on the jury.

At the close of the evidence, the court instructed the jury on second degree kidnapping and first degree sexual assault and submitted guilty and not guilty verdict forms for the three counts of second degree kidnapping and the one count of first degree sexual assault. As part of the guilty verdict forms, the court included a special finding, pursuant to the provisions

of the crime of violence statute,[5] that required the jury to determine whether the defendant did or did not use a deadly weapon during the commission of the substantive crime in question. The court, however, did not submit a separate instruction to the jury outlining the elements of a crime of violence, nor did the court instruct the jury that these elements had to be proven beyond a reasonable doubt.

The jury returned guilty verdicts on the three counts of second degree kidnapping and the one count of first degree sexual assault and further found that the defendant had used a deadly weapon during the commission of these crimes. After the return of these verdicts the court conducted a separate proceeding before the jury on the habitual criminal counts. The jury returned verdicts finding that the defendant had been previously convicted of three prior felonies as charged. The court ultimately sentenced the defendant to life imprisonment as a habitual criminal.

The court of appeals reversed the defendant's convictions and ordered a new trial. Stating that " '[j]ustice would have been served by excusing this potential juror,' " *Russo*, 677 P.2d at 388, the court of appeals concluded that the trial court's denial of the defendant's causal challenge was reversible error. Because the resolution of the jury selection issue required a new trial on all charges, the court of appeals elected to address the separate issue of whether the trial court properly instructed the jury on the crime of violence charge. With respect to this issue, the court of appeals held that the trial court erred in not separately instructing the jury on the essential elements of a crime of violence and on the prosecution's burden to prove these elements beyond a reasonable doubt. We granted the People's petition to review the court of appeals' resolution of these two issues.

## II.

The People claim that the court of appeals erred in concluding that the trial court's denial of the defendant's causal challenge of the juror who worked as a part-time journalist constituted reversible error. We agree with the People's claim.

## A.

■ A criminally accused has a right to a fair trial by a panel of impartial jurors. *E.g., Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *People v. Gurule*, 628 P.2d 99 (Colo.1981). To implement this right, section 16–10–103(1), 8 C.R.S. (1978), provides as follows:

(1) The court shall sustain a challenge for cause on one or more of the following grounds:

(a) Absence of any qualification prescribed by statute to render a person competent as a juror; [6]

(c) Is incapable, by reason of his physical or mental disability, of rendering satisfactory jury service, but a person claiming this disqualification may be required to submit a physician's or authorized Christian Science practitioner's certificate as to the disability, and the certifying physician or practitioner is subject to inquiry by the court at its discretion; however, no person shall be deemed to be incapable of jury service solely because of impaired vision or hearing in any degree, although the existence of a defect in the visual or auditory functions may be grounds for challenge for cause if the court is satisfied that the challenged person is incapable of performing the duties of a juror in a particular action without prejudice to the substantial rights of the challenging parties; or

(d) Does not have the right to vote by reason of a criminal conviction.

---

5. Section 16–11–309(5), 8 C.R.S. (1985 Supp.), states in pertinent part as follows:

The jury ... shall make a specific finding as to whether the accused did or did not use, or possessed and threatened to use, a deadly weapon during the commission of such crime.... If the jury or court finds that the accused used, or possessed and threatened the use of, such deadly weapon ... the penalty provisions of this section shall be applicable.

6. The disqualifications for jury service are contained in section 13–71–109(2), 6 C.R.S. (1973 & 1985 Supp.), which states as follows:

(2) A prospective juror is disqualified to serve if he:

(a) Is not a citizen of the United States, eighteen years old, and a resident of the county; or

(b) Is unable to read, speak, and understand the English language; or

(b) Relationship within the third degree, by blood, adoption, or marriage, to a defendant or to any attorney of record or attorney engaged in the trial of the case;

(c) Standing in the relation of guardian and ward, employer and employee, landlord and tenant, debtor and creditor, or principal and agent to, or being a member of the household of, or a partner in business with, or surety on any bond or obligation for any defendant;

(d) The juror is or has been a party adverse to the defendant in a civil action or has complained against or been accused by him in a criminal prosecution;

(e) The juror has served on the grand jury which returned the indictment, or on a coroner's jury which inquired into the death of a person whose death is the subject of the indictment or information, or on any other investigatory body which inquired into the facts of the crime charged;

(f) The juror was a juror at a former trial arising out of the same factual situation or involving the same defendant;

(g) The juror was a juror in a civil action against the defendant arising out of the act charged as a crime;

(h) The juror was a witness to any matter related to the crime or its prosecution;

(i) The juror occupies a fiduciary relationship to the defendant or a person alleged to have been injured by the crime or the person on whose complaint the prosecution was instituted;

(j) The existence of a state of mind in the juror evincing enmity or bias toward the defendant or the state; however, no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial;

(k) The juror is a lawyer or a compensated employee of a public law enforcement agency.

Because this statute operates as the legal basis for challenging a juror for cause, *People v. Lewis*, 180 Colo. 423, 506 P.2d 125 (1973), *Bustamante v. People*, 133 Colo. 497, 297 P.2d 538 (1956), it is incumbent upon the challenging party to clearly state of record the particular ground on which a challenge for cause is made. Only in this way can the court and opposing counsel direct appropriate questions to the juror to determine whether the challenge is well taken.

In this case defense counsel did not cast his challenge in terms of any one of the many statutory grounds for a causal challenge, but simply claimed that the juror should be excused because he apparently had some access to information not available to other jurors. While we seriously question whether the challenge was adequately made in terms of the statute to preserve the issue for appeal, we elect nonetheless to overlook the formal defects in the challenge and address whether the interrogation of the prospective juror established any grounds on which the juror could be legitimately challenged for cause. The only arguable statutory basis for challenge that could possibly be implicated by the juror's responses is "[t]he existence of a state of mind in the juror evincing enmity or bias toward the defendant," as provided in section 16–10–103(1)(j), 8 C.R.S. (1978). It is in this context, therefore, that we consider whether the trial court's denial of the causal challenge was error.

**B.**

There can be no question that the trial court must grant a challenge for cause directed to a prospective juror who is unwilling or unable to accept the basic principles of law applicable to a criminal trial and to render a fair and impartial verdict based upon the evidence admitted at trial and the instructions of law given to the jury by the court. *E.g., People v. Abbott*, 690 P.2d 1263 (Colo.1984); *People v. Wright*, 672

P.2d 518 (Colo.1983). Such a juror clearly demonstrates the enmity or bias that will support a challenge for cause under section 16–10–103(1)(j), 8 C.R.S. (1978). So also, a challenge for cause must be granted when the voir dire interrogation shows that the juror has formed an opinion about the guilt or innocence of the accused and is incapable of setting that opinion aside. The unyielding opinion of the juror on the ultimate issue of the case is the very antithesis of the neutral and detached attitude that is indispensable to fair and impartial deliberation.

■■ In those instances in which a prospective juror is challenged on the basis of a statement that on its face depicts enmity or bias toward the defendant or the state, the challenge should be sustained unless the subsequent examination of the juror clearly demonstrates that the juror's original statement was the result of mistake, confusion, or some other factor that will have no effect whatever on the juror's ability to render a fair and impartial verdict. If the trial court has genuine doubt about the juror's ability to be impartial under such circumstances, it should resolve the doubt by sustaining the challenge. *See, e.g., Gurule,* 628 P.2d 99; *Nailor v. People,* 200 Colo. 30, 612 P.2d 79 (1980). When a causal challenge for enmity or bias is made against a prospective juror who disavows any prejudicial bent of mind but nonetheless acknowledges some experience or knowledge that counsel believes could possibly affect the juror's competence to serve on the case, the trial court must be accorded considerable discretion in passing on the challenge. *See Abbott,* 690 P.2d 1263; *People v. McCrary,* 190 Colo. 538, 549 P.2d 1320 (1976). A wide latitude of trial court discretion is appropriate under these circumstances because the resolution of the challenge will ultimately turn on an assessment of such intangibles as the juror's credibility with respect to his own state of mind and his attitude toward the serious responsibility of jury duty. Inasmuch as the juror's responses are made under oath, we believe it is the trial court's prerogative to give considerable weight to the juror's assurance that he can fairly and impartially serve on the case. In the absence of an affirmative showing of record that the trial court has clearly abused its discretion in passing on the challenge for cause, its decision will not be disturbed on appeal. *E.g., Abbott,* 690 P.2d 1263; *Gurule,* 628 P.2d 99; *People v. Taggart,* 621 P.2d 1375 (Colo. 1981).

## C.

■■ We are satisfied that the trial court's decision to deny the defendant's challenge for cause, when considered in light of the above guidelines, was not an abuse of discretion. Throughout the voir dire examination the juror unequivocally assured the court that he could and would fairly and impartially decide the case on the basis of the evidence and the law, and nothing in the court's or defense counsel's examination of the juror impugned that assurance.

Although the juror acknowledged that he reviewed a police report in the course of writing a newspaper account of the alleged offenses, there was no showing that the report was in any way prejudicial to the defendant. On the contrary, the juror stated that he remembered little about the report and that the bulk of his recollection centered on a complaint by the discotheque manager about that part of the newspaper story which described the incident as beginning inside the discotheque. Moreover, there is no indication that the juror formed or expressed any opinion about the defendant's guilt or innocence in the newspaper article or otherwise.

■■ The fact that the juror acknowledged that he knew several members of the sheriff's office who were listed as prosecution witnesses does not alter our conclusion. Nothing in the voir dire examination suggests that the juror spoke to the prospective witnesses about any matter that might have compromised his ability to serve as a fair and impartial juror. Indeed, the juror had no hesitation in assuring the court that he would evaluate the testimony

of the sheriff's officers by the same standards applicable to any other witness.

In the absence of anything in the voir dire examination to discredit the juror's assurances of fairness and impartiality, we are satisfied that the trial court's denial of the defendant's challenge for cause was a legitimate exercise of judicial discretion. The court of appeals erred, therefore, in its resolution of this issue.[7]

## III.

We turn then to the issue of whether the trial court erred in failing to separately instruct the jury on the essential elements of a crime of violence and on the prosecution's burden to prove those elements beyond a reasonable doubt. We conclude that while it was error not to so instruct the jury, the error was harmless under the circumstances of this case.

7. In reversing the judgment, the court of appeals stated:

> If it is error to refuse a challenge for cause to a potential juror, and the party challenging that juror is subsequently forced to exhaust all of his peremptory challenges, the error is prejudicial.... We know of no principle of law which requires the defendant to exhaust his remaining peremptory on the juror who was not removed for cause. Any such requirement would result in denying a defendant the right to use his peremptory challenges as he sees fit.

677 P.2d at 388. Because we hold that the judgment of the court of appeals was bottomed on the erroneous determination that the trial court erred in denying the defendant's challenge for cause, there is no need for us to address the correctness of the court of appeals' conclusion that an erroneous denial of a challenge for cause results in prejudicial error as long as the defendant exhausts any remaining peremptory challenges, even though he does not use a peremptory challenge to excuse the juror whom he unsuccessfully challenged for cause. We perceive, however, an obvious tension between the court of appeals' conclusion and prior decisions of this court. See, e.g., People v. Silvola, 190 Colo. 363, 547 P.2d 1283, cert. denied sub nom. Silvola v. Colorado, 429 U.S. 886, 97 S.Ct. 238, 50 L.Ed.2d 167 (1976); Skeels v. People, 145 Colo. 281, 358 P.2d 605 (1961).

8. The 1979 version of the violent crime statute, ch. 157, sec. 9, § 16-11-309(1), 1979 Colo.Sess. Laws, stated as follows:

## A.

■ Since the date of the commission of the substantive crimes charged in this case was August 12, 1979, the then existing version of the crime of violence statute is controlling on the resolution of the issue before us.[8] A crime of violence includes any "crime in which the defendant used, or possessed and threatened the use of, a deadly weapon during the commission" of kidnapping or sexual assault. § 16-11-309(2), 8 C.R.S. (1978). Section 16-11-309(4), 8 C.R.S. (1978), provides that a crime of violence must be charged in a separate count of the information. In the event a guilty verdict is returned on the substantive crime on which the violent crime charge is predicated, section 16-11-309(5), 8 C.R.S. (1978), requires the jury to make a specific finding "as to whether the accused did or did not use, or possessed and threatened to use, a deadly weapon"

> Any person convicted of a crime of violence shall be sentenced to at least the minimum term of incarceration in the presumptive range provided for such offense in section 18-1-105(1)(a), C.R.S. 1973, without suspension; except that, within ninety days after he has been placed in the custody of the department of corrections, the department shall transmit to the sentencing court a report on the evaluation and diagnosis of the violent offender, and the court, in a case which it considers to be exceptional and to involve unusual and extenuating circumstances, may thereupon modify the sentence, effective not earlier than one hundred twenty days after his placement in the custody of the department. Such modification may include probation if the person is otherwise eligible therefor. Whenever a court finds that modification of a sentence is justified, the judge shall notify the state court administrator of his decision and shall advise said administrator of the unusual and extenuating circumstances that justified such modification. The state court administrator shall maintain a record, which shall be open to the public, summarizing all modifications of sentences and the grounds therefor for each judge of each district court in the state.

The statute has since been amended to increase the mandatory sentence to "a term of incarceration greater than the maximum in the presumptive range, but not more than twice the maximum term" applicable to the substantive offense. § 16-11-309(1)(a), 8 C.R.S. (1985 Supp.).

**364**

during the commission of the substantive offense. If the jury finds that the accused used, or possessed and threatened the use of, such deadly weapon, then the 1979 statute required the court to sentence the defendant on the substantive crime to at least the minimum presumptive term applicable to that offense, subject to the proviso that this sentence could later be reduced in an exceptional case involving unusual and extenuating circumstances. Ch. 157, sec. 9, § 16–11–309(1), 1979 Sess.Laws 664, 666.

The crime of violence statute is clearly a sentencing provision. *People v. Eggers*, 196 Colo. 349, 585 P.2d 284 (1978). The jury's finding that the defendant used, or possessed and threatened to use, a deadly weapon during the commission of the substantive crime charged in the information does not constitute a separate felony conviction. Rather, the special finding serves as the basis for the mandatory sentence which must be imposed on the defendant's conviction for the separately charged substantive offense. Characterizing the crime of violence statute as a sentencing provision, however, is not to say that the trial court is thereby authorized to dispense with appropriate jury instructions on this aspect of the case. Although the crime of violence statute is silent on the burden of proof applicable to that charge, we are satisfied that the only plausible interpretation of the statute is that the legislature intended the violent crime charge to be proven by the same standard of proof applicable to the trial of the substantive crime on which the violent crime charge is predicated.

Basic rules of statutory construction support our conclusion. It must be presumed that in enacting a statute the legislature intended a just and reasonable result. § 2–4–201(1)(c), 1B C.R.S. (1980). Under the 1979 statutory scheme applicable here, the jury's special finding that the defendant used, or possessed and threatened to use, a deadly weapon during the commission of the substantive crime charged against him resulted in subjecting the defendant to a mandatory sentence on

his conviction for the substantive offense, which sentence could be later modified only upon a finding of unusual and extenuating circumstances. Ch. 157, sec. 9, § 16–11–309(1), 1979 Colo.Sess.Laws 664, 666. We believe that if the legislature intended to permit this special jury finding to be made on less than the reasonable doubt standard applicable to the trial of substantive crimes, § 18–1–402, 8 C.R.S. (1978), it would have so stated. To engraft a lesser standard of proof onto the statutory scheme in the face of this legislative silence would hardly comport with basic fairness.

Moreover, it must also be presumed that the legislature intended a result feasible of execution. § 2–4–201(1)(d), 8 C.R.S. (1978). The statutory requirement of a special finding cannot be effectively implemented unless the trial court instructs the jury on both the essential elements of the violent crime charge and the burden of proof applicable to that charge. Finally, when, as here, the statutory scheme is silent on the burden of proof applicable to the requisite special finding, the rule of lenity dictates that we adopt the construction that favors the defendant. *E.g., People v. Lowe*, 660 P.2d 1261 (Colo.1983); *People v. Roybal*, 618 P.2d 1121 (Colo. 1980). We agree, therefore, with the court of appeals that the trial court erred in failing to instruct the jury on the essential elements of a crime of violence and on the prosecution's burden to prove those elements beyond a reasonable doubt.

### B.

Although the trial court's failure to correctly instruct the jury on the violent crime charge was error, we are satisfied that the error was harmless. While the jury's finding on the crime of violence charge required the imposition of sentences to at least the minimum presumptive sentence applicable to second degree kidnapping and first degree sexual assault, the finding had no significance whatever to the much greater sentence applicable to the jury verdicts on the three habitual criminal

counts. These verdicts resulted in the imposition of a life sentence pursuant to section 16–13–101(2), 8 C.R.S. (1985 Supp.). Under these circumstances, the trial court's error in failing to properly instruct the jury on the violent crime charge was totally offset by the life sentence imposed on the separate and independent adjudication of the defendant as a habitual criminal.

We accordingly reverse the judgment of the court of appeals.

DUBOFSKY, J., concurs in part and dissents in part.

LOHR and NEIGHBORS, JJ., join in the concurrence and dissent.

DUBOFSKY, Justice, concurring in part and dissenting in part:

I agree with the majority opinion that the district court's failure to separately instruct the jury on the essential elements of the crime of violence and on the prosecution's burden to prove those elements beyond a reasonable doubt constituted plain error, but that the error was harmless under the circumstances of this case. I agree with the court of appeals, however, that the district court's denial of the defendant's causal challenge of the juror who worked as a part-time journalist constituted reversible error.

In this case defense counsel challenged the prospective juror for cause because the juror had access to information not available to other jurors. Because a juror's determination of guilt or innocence is to be made based on the evidence presented at trial, this court has granted a new trial in cases where jurors may have based their decision as to the defendant's guilt on information gained outside of the trial. *Blades v. DaFoe*, 704 P.2d 317, 325 (Colo. 1985) (retrial allowed in medical malpractice action where juror was an insurance claims adjuster, had reviewed insurance reports written by one defendant and potential expert witnesses, and stated that plain-

tiffs would have an "uphill battle"); *Niemand v. District Court*, 684 P.2d 931 (Colo.1984) (retrial allowed where juror consults legal dictionary outside of court); *Alvarez v. People*, 653 P.2d 1127 (Colo.1982) (same); *see People v. Thatcher*, 638 P.2d 760, 770 (Colo.1981) ("Independent investigation by jurors violates the defendant's right to confront witnesses and to have his guilt determined solely on the evidence admitted at trial"); *People v. Reed*, 42 Colo. App. 275, 598 P.2d 148 (1979) (failure to grant new trial is not error where juror had merely conducted experiment related to defendant's alibi defense and had not visited the scene of the crime nor driven any particular route that was involved in the case).

The prospective juror in this case investigated the events surrounding the kidnapping and sexual assault. Not only had the juror written a story about the incident based on a police report, but he reread the police report in response to a complaint by the discotheque manager about the newspaper's reporting of the complaint. Because of the discotheque manager's challenge to the prospective juror's article, the juror had an interest in which version of the facts came out at trial. Unlike prospective jurors who have been exposed to pretrial publicity, *see People v. McCrary*, 190 Colo. 538, 549 P.2d 1320 (Colo.1976), this prospective juror's source was not an objective news report but rather a police officer whose interests were aligned with those of the prosecution. The prospective juror's position is similar to that of a prospective juror who has served on the grand jury that returned the indictment[1] because in both instances the prospective juror has independent evidence from a police officer.

The fact that a juror has given assurances that he can put aside what he has read about a case and the conclusions he has drawn is insufficient, by itself, to establish that such a juror will be fair and impartial. *Beeman v. People*, 193 Colo. 337, 565 P.2d 1340 (1977); *McCrary*, 190

---

**1.** Section 16–10–103(1)(e), 8 C.R.S. (1978), requires a court to sustain a challenge for cause if a "juror has served on the grand jury which

returned the indictment ... or on any other investigatory body which inquired into the facts of the crime charged...."

Colo. 538, 549 P.2d 1320. Although the prospective juror stated that he would not consider anything that he had read in the report and that he would base his decisions solely on what he had heard in court, the testimony at trial could contradict something the reporter had learned from the police report, something he had learned from the discotheque manager, or something that he had written in his article. The fact that the prospective juror professed to be without bias is therefore not sufficient to guarantee the defendant an impartial juror. *See McCrary,* 190 Colo. at 547, 549 P.2d at 1327. The prospective juror in this case stated that he remembered very little about the kidnapping and sexual assault, but he undoubtedly would have remembered more information during the course of the trial, information that could contradict trial testimony and serve as an independent basis for a verdict. In addition, the fact that this juror became the foreperson put him in a position to influence other jurors. Because the sixth and fourteenth amendments to the United States Constitution and article II, sections 16 and 25, of the Colorado Constitution guarantee a defendant a fair trial by an impartial jury, *Maes v. District Court,* 180 Colo. 169, 503 P.2d 621 (1972), and a juror should be "indifferent as he stands unsworn," *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961), I agree with the court of appeals that this juror should have been excused for cause.

I am authorized to say that Justice LOHR and Justice NEIGHBORS join in this concurrence and dissent.