The PEOPLE of the State of Colorado, Petitioner,

v.

**Leo Jason MACRANDER, Respondent.**

No. 91SC416.

Supreme Court of Colorado, En Banc.

April 6, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Timothy R. Twining, Asst. Atty. Gen., Denver, for petitioner.

David F. Vela, State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, for respondent.

Justice QUINN delivered the Opinion of the Court.

In *People v. Macrander*, 817 P.2d 579 (Colo.App.1991), the court of appeals decided two questions concerning jury selection in a criminal prosecution. The court held that a prospective juror whose son was a deputy district attorney on the staff of the elected district attorney who initiated the prosecution was subject to a challenge for cause under section 16–10–103(1)(b), 8A C.R.S. (1986), as being related within the third degree "to any attorney of record." The court also held that the trial court's denial of the defendant's challenge for cause was prejudicial error requiring a new trial under circumstances where the defendant removed the suspect juror by peremptory challenge and exhausted all available peremptory challenges on other jurors. We granted certiorari to review the decision of the court of appeals, and we now affirm the judgment.

I.

The defendant, Leo Jason Macrander, was charged in a felony complaint filed in the County Court of Jefferson County with

attempted second degree murder,[1] first degree assault on a peace officer,[2] felony menacing,[3] and two counts of committing a crime of violence,[4] all of which allegedly occurred on May 28, 1988. The complaint began by stating that "Donald E. Mielke, District Attorney in and for the First Judicial District of the State of Colorado, in the name and by the authority of the People of the State of Colorado, informs the court," and then set forth five separate felony counts. The complaint was signed in the following manner:

Donald E. Mielke
District Attorney
/s James D. Anderson
Deputy District Attorney
Registration No. 13121

The defendant waived his right to a preliminary hearing, and the case was bound over for trial to the District Court of the First Judicial District.

On May 16, 1989, jury selection commenced in the district court. During the trial court's general questioning of the entire jury panel, one of the prospective jurors, Catherine McNulty, stated that her son is "a deputy district attorney for this district." When Mrs. McNulty was later called into the jury box for further questioning on voir dire, the following exchange occurred between her and the prosecuting attorney, James Stanley:

Mr. Stanley: Now, Mrs. McNulty, of course you present a special situation for everyone here, being that I work with your son.

Juror McNulty: Yes.

Mr. Stanley: I don't work with him, but he's in our office. Do you know me? Have you ever seen me before?

Juror McNulty: No.

Mr. Stanley: Well, your son doesn't discuss anything about his work?

Juror McNulty: No, he doesn't.

\* \* \* \* \* \*

Mr. Stanley: Well, as you know, and as you recognize immediately, of course, it's a concern that your son is a district attorney, and the obvious question is, you know: How do you feel about it? Do you think you could be completely fair if you were on this jury?

Juror McNulty: I think so.

Mr. Stanley: I mean, for instance, whatever your decision is, when you go back and see him—well, of course you don't live with your son.

Juror McNulty: No. He's married.

Mr. Stanley: Do you see him much?

Juror McNulty: Yes. He's over quite a bit.

Mr. Stanley: I suppose one thought that we're all having is that you might feel pressured to lean towards the prosecution because of your son's occupation. Do you feel that way at all?

Juror McNulty: I don't think so.

Defense counsel, during his voir dire examination of the prospective jurors, challenged Mrs. McNulty for cause pursuant to section 16–10–103(1)(b), 8A C.R.S. (1986), on the ground that her son was a deputy district attorney on the staff of the district attorney's office which initiated the prosecution and that the district attorney's office was the attorney of record in the case. The prosecuting attorney objected to defense counsel's challenge for cause, and the trial court denied the challenge. The trial court ruled that because Mrs. McNulty's son was not involved in the particular case being tried, her son was not an "attorney of record" within the meaning of that term in section 16–10–103(1)(b). Defense counsel thereafter used a peremptory challenge to remove Mrs. McNulty and exhausted all five peremptory challenges authorized by section 16–10–104, 8A C.R.S. (1986). At the conclusion of the voir dire, the court swore the impaneled jurors for trial.[5] The jury ultimately returned guilty

---

1. §§ 18–2–101 & 18–3–103, 8B C.R.S. (1986).

2. § 18–3–202, 8B C.R.S. (1986).

3. § 18–3–206, 8B C.R.S. (1986).

4. § 16–11–309, 8A C.R.S. (1986).

5. After the jury was sworn, defense counsel, out of the presence of the jury, requested an additional peremptory challenge to offset the court's denial of the previous challenge for cause directed at Mrs. McNulty. The court denied defense counsel's request. We do not consider

verdicts on all counts, and the court imposed concurrent sentences with a maximum term of thirty-two years.

The defendant appealed to the court of appeals, which reversed the judgment of conviction and remanded the case for a new trial. The court of appeals reasoned that "each member of the staff of a district attorney, who is charged by law with prosecuting a particular case, must be considered to be an 'attorney of record' in those cases being prosecuted in the name of that district attorney, at least for purposes of the particular statute under consideration here." *Macrander*, 817 P.2d at 582. In addition, the court of appeals held that where, as here, the trial court erroneously denies a challenge for cause and "the defendant uses all of his peremptory challenges, including one to remove the disqualified juror," the trial court's denial of the challenge for cause must be viewed as prejudicial error because its effect is "to deprive the defendant of his guaranteed number of peremptory challenges." *Id.*

We granted the People's petition for certiorari to consider whether the term "attorney of record" in section 16–10–103(1)(b), 8A C.R.S. (1986), includes all deputy district attorneys on the staff of the district attorney's office responsible for the prosecution of the case then being tried, including those deputies who have had no involvement in the case, and also whether prejudicial error occurs when a trial court erroneously denies a challenge for cause and the defendant thereafter uses a peremptory challenge to remove the suspect juror not removed for cause and exhausts all available peremptory challenges.

## II.

We first address the meaning of the term "attorney of record" in section 16–10–103(1)(b). The People argue that the term refers only to those prosecuting attorneys who have had some direct involvement in the case by signing a charging document or

other pleading, or by appearing in court on behalf of the People at some stage of the prosecution. Our resolution of the People's claim proceeds from a consideration of the purpose served by the challenge for cause in a criminal case and the nature and scope of the statutory authority vested in the elected district attorney and members of the district attorney's prosecuting staff.

## A.

■ "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). Fairness requires more than the elimination of actual prejudice. It has been cogently observed that if justice "is to perform its high function in the best way," it not only must achieve the reality of fairness but "must satisfy the appearance of justice" as well. *Id.* To that end, the right to challenge a juror for cause has been recognized as an integral part of a fair trial. *Beeman v. People*, 193 Colo. 337, 339, 565 P.2d 1340, 1342 (1977).

"The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as a matter of law." *United States v. Wood*, 299 U.S. 123, 133, 57 S.Ct. 177, 179, 81 L.Ed. 78 (1936). Actual bias is a state of mind that prevents a juror from deciding the case impartially and without prejudice to a substantial right of one of the parties. *Black's Law Dictionary* 162 (6th ed. 1990). Implied bias is "a bias attributable in law to the prospective juror regardless of actual partiality." *Wood*, 299 U.S. at 134, 57 S.Ct. at 179. Bias may be implied, for example, when a prospective juror has a close relationship to a party or attorney in the case, or has had an important contact with the case, so as to create serious doubt about the prospective juror's impartiality, if not in fact, then at least in appearance. *People in the Interest of R.A.D.*, 196 Colo. 430, 432, 586 P.2d 46, 47 (1978).

defense counsel's request legally significant to our resolution of this case. *See generally Blades v. DaFoe*, 704 P.2d 317, 321 (Colo.1985); *People v. Fink*, 41 Colo.App. 47, 49–50, 579 P.2d 659,

661 (1978) (trial court has no discretion to grant peremptory challenges in excess of number authorized by statute).

Section 16–10–103(1) lists eleven separate grounds for challenging a prospective juror for cause and states that the court "shall sustain a challenge for cause" predicated on any one of them. Those grounds include not only a demonstrable showing of a prospective juror's actual bias but extend to various forms of implied bias as well, including specific relationships between a prospective juror and an interested party or participant in the case and particular experiences which might impair a prospective juror's ability to maintain a genuine state of impartiality throughout the trial.[6] Included within these eleven grounds is the prospective juror's "[r]elationship within the third degree by blood, adoption, or marriage ... to an attorney of record or attorney engaged in the trial of the case."[7] Section 16–10–103(1)(b) evinces a realistic legislative judgment that a prospective juror's close familial relationship to an attorney of record could engender such subtle forms of pressure on the juror's "sense of impartiality" as to constitute a bias implied by law without regard to a demonstration of actual bias.

We have accorded a trial court considerable discretion in ruling on causal challenges predicated on actual bias primarily because such challenges require an assessment of the prospective juror's credibility, demeanor, and sincerity in explaining his or her state of mind and because the trial court is in a preferred position to evaluate those factors. *E.g., People v. Abbott,* 690 P.2d 1263 (Colo.1984); *People v. Wright,* 672 P.2d 518 (Colo.1983); *People v. McCrary,* 190 Colo. 538, 549 P.2d 1320

6. Section 16–10–103(1), 8A C.R.S. (1986), states:
(1) The court shall sustain a challenge for cause on one or more of the following grounds:
(a) Absence of any qualification prescribed by statute to render a person competent as a juror;
(b) Relationship within the third degree by blood, adoption, or marriage, to a defendant or to any attorney of record or attorney engaged in the trial of the case;
(c) Standing in the relation of guardian and ward, employer and employee, landlord and tenant, debtor and creditor, or principal and agent to, or being a member of the household of, or a partner in business with, or surety on any bond or obligation for any defendant;
(d) The juror is or has been a party adverse to the defendant in a civil action or has complained against or been accused by him in a criminal prosecution;
(e) The juror has served on the grand jury which returned the indictment, or on a coroner's jury which inquired into the death of a person whose death is the subject of the indictment or information, or on any other investigatory body which inquired into the facts of the crime charged;
(f) The juror was a juror at a former trial arising out of the same factual situation or involving the same defendant;
(g) The juror was a juror in a civil action against the defendant arising out of the act charged as a crime;
(h) The juror was a witness to any matter related to the crime or its prosecution;
(i) The juror occupies a fiduciary relationship to the defendant or a person alleged to have been injured by the crime or the person on whose complaint the prosecution was instituted;

(j) The existence of a state of mind in the juror evincing enmity or bias toward the defendant or the state; however, no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.
(k) The juror is a lawyer or a compensated employee of a public law enforcement agency.
Crim.P. 24(b)(1)(II) tracks the language of section 16–10–103(1)(b). Our construction of the term "attorney of record," therefore, applies equally to both the statute and the rule.

7. The term "third degree" describes a degree of relationship between one person and another based on consanguinity, or blood relationship, and affinity, or relationship by marriage. Each generation is called a degree in determining the particular degree of the relationship. *See generally,* 54 A.L.R.2d 1009, 1012–13, *Descent and Distribution to and Among Cousins* (1957). Without exhausting the possible relationships, a prospective juror would be related to an attorney of record within the third degree "by blood" if the attorney was the juror's child or parent; brother, sister, grandchild or grandparent; or niece, nephew, great-grandparent or great-grandchild. Similarly, a prospective juror would be related to an attorney of record within the third degree "by marriage" if the attorney was the spouse of the prospective juror, or if the attorney was the child, sibling, grandchild, grandparent, uncle, aunt, niece, nephew, great-grandchild, or great grandparent of the spouse of the prospective juror.

(1976). A challenge for cause predicated on section 16–10–103(1)(b), however, involves a narrow inquiry into an objective and readily determinable relationship between the prospective juror and an attorney of record. If the statutory relationship is established and a party challenges the prospective juror for cause on that ground, the trial court has no discretion in the matter and "shall sustain the challenge" by removing the juror from further service on the case.[8]

### B.

The Colorado Constitution states that "[i]n each judicial district there shall be a district attorney elected by the electors thereof." Colo. Const., art. VI, § 13. Although the district attorney is an officer of the court as any other attorney, the district attorney is a member of the executive department, *People v. District Court*, 186 Colo. 335, 338, 527 P.2d 50, 52 (1974), and in that capacity is expressly authorized by statute to appear on behalf of the People in all criminal cases for crimes committed within the geographical boundaries of the judicial district served by the district attorney. *See* § 20–1–102(1), 8B C.R.S. (1986); *People v. Taylor*, 732 P.2d 1172, 1178 (Colo.1987). One of the statutory requirements of a criminal prosecution, whether initiated by indictment or information, is that it be signed by the person authorized by law to prosecute the offense—namely, the district attorney of the judicial district in which the alleged crime was committed. §§ 16–5–201, –202, 8A C.R.S. (1986).

The elected district attorney is authorized to appoint not only an assistant and chief deputy district attorney, §§ 20–1–201(2), –205, 8B C.R.S. (1986), but also "such deputy district attorneys as he deems necessary to properly discharge the duties of his office," § 20–1–201(1)(a), 8B C.R.S. (1986). Assistant, chief deputy, and deputy district attorneys must be admitted to practice law in the State of Colorado,

serve at the pleasure of the district attorney §§ 20–1–201(1)(a), (b), –205(1)(a), 8B C.R.S. (1986), and have "all the powers of the district attorney," §§ 20–1–202, –204, –207, 8B C.R.S. (1986). The design of this statutory scheme is to reciprocally vest prosecutorial authority in the elected district attorney and all members of the district attorney's staff—the assistant, chief deputy, and deputy district attorneys—so that an act performed by the district attorney is an act undertaken on behalf of all members of the district attorney's prosecuting staff in the same manner and to the same extent as an act performed by an assistant, chief deputy, or deputy district attorney is an act undertaken on behalf of the elected district attorney.

### C.

The purpose of the challenge for cause and the nature of the agency relationship existing between a district attorney and members of the district attorney's prosecuting staff provide the analytical framework for our construction of the term "attorney of record" in section 16–10–103(1)(b). The term "attorney of record" is commonly understood to refer to a lawyer who has formally appeared in court for the purpose of representing a party in a judicial proceeding. This commonly understood meaning is not substantially different from the technical sense of the term, which is an attorney who has formally entered the case on behalf of a party by filing a written entry of appearance or by informing the court on the record of the attorney's entry into the case. *See Black's Law Dictionary* 129 (6th ed. 1990) (defining "attorney of record" as an attorney who has filed a notice of appearance and "hence is formally mentioned in court records as the official attorney of a party"); C.R.J.P. 2.1 (attorney is "of record" when attorney "appears personally before the court, files a written entry of appearance, or has been

8. The mere fact that the prospective juror's relationship with an attorney of record satisfies the basis for a challenge for cause does not mean that the juror must be automatically excluded from service on the case. The design of the statute is to provide both the prosecution and the defense with the right either to challenge the prospective juror for cause or to forego the challenge.

appointed by the court"); C.R.C.P. 13 (attorney desiring to enter appearance, other than attorney initially appearing on behalf of a party in first instance, must file written entry of appearance or obtain court order recognizing attorney's appearance); C.R.C.P. 121, § 1-1 (no attorney shall appear in any matter until attorney files written entry of appearance).

■ Both the commonly accepted and technical meanings of the term "attorney of record" leave no doubt that the elected district attorney of a judicial district who initiates a criminal prosecution is clearly an "attorney of record" for purposes of section 16-10-103(1)(b). We are also convinced that, in light of the need to eliminate the more subtle forms of bias stemming from a prospective juror's relationship to an interested party or participant in the case, the term "attorney of record" in section 16-10-103(1)(b) should be construed to include any deputy district attorney serving in the office of the district attorney at the time of the voir dire examination, even though the deputy district attorney may not have formally appeared or participated in the case. That construction, we believe, furthers the object sought to be achieved by the challenge for cause and is consistent with the legislative decision to vest reciprocal prosecutorial authority in the elected district attorney and members of the district attorney's prosecuting staff.

■ We have recognized in other contexts the all-inclusive and reciprocal agency relationship existing between a district attorney and members of the district attorney's prosecuting staff. *See, e.g., Pease v. District Court,* 708 P.2d 800, 802 (Colo. 1985) (ethical rule of imputed disqualification, which requires private law firm to withdraw when another lawyer in firm is to be called as witness on contested issue, applicable to entire district attorney's office when deputy district attorney endorsed as prosecution witness); *People v. Garcia,* 698 P.2d 801, 806 (Colo.1985) (same); *People v. Castro,* 657 P.2d 932, 944 (Colo.1983) (assistant and deputy district attorneys function "by virtue of the district attorney's authority," and acts of an assistant or deputy district attorney are done in name of district attorney); *DeLuzio v. People,* 177 Colo. 389, 394-96, 494 P.2d 589, 592-93 (1972) (chief deputy district attorney's knowledge of perjured testimony by prosecution witness imputed to district attorney). We would substantially depreciate the role assigned to the challenge for cause in a criminal case were we now to hold that, notwithstanding the pervasiveness of the agency relationship between an elected district attorney and members of the district attorney's prosecuting staff, only those deputy district attorneys who formally appeared or participated in the case qualified as attorneys of record for purposes of section 16-10-103(1)(b).[9]

■ We cannot ignore the practical consequences of the construction urged by the People, which would limit an "attorney of record" to a deputy district attorney who formally appeared or participated at some stage of the criminal prosecution. Under that construction, a deputy district attorney who conducted a lengthy investigation of the case and recommended the filing of criminal charges against the defendant, or who undertook significant legal research on critical issues involved in the prosecution, would lack the direct and formal involvement in the case essential to a chal-

---

9. The People contend that the inclusion of the term "attorney engaged in the trial of the case" in section 16-10-103(1)(b) evidences a legislative attempt to exempt only those potential jurors who are related to attorneys with a direct and formal involvement in the case. In our view, the term "attorney engaged in the trial of the case" is self-defining and refers to an attorney who actually participates in the trial before the jury. An "attorney engaged in the trial of the case" obviously would be an attorney of record, with the result that any prospective juror related to that attorney within the third degree would be subject to a challenge for cause. The fact that the statutory challenge for cause is cast in alternative terms of "any attorney of record or attorney engaged in the trial of the case" is entirely consistent with a legislative intent to include not only all prosecuting attorneys on the district attorney's staff but also defense attorneys who previously entered an appearance on behalf of the defendant but who may not be participating in the trial of the case, as well as any attorney who will act on behalf of any party during the trial regardless of the level of that attorney's participation.

lenge for cause, despite the fact that the deputy district attorney well might have a much greater interest in the outcome of the case than a deputy who formally appeared on behalf of the People at an arraignment or some other routine phase of the criminal prosecution. A mother, father, wife, or husband of the deputy district attorney who investigated the case or researched legal issues would not be challengeable for cause under the People's proposed construction, while the same relatives of a deputy district attorney whose only role in the case consisted of appearing at a routine arraignment would be subject to a challenge for cause. The consequences of the People's proposed construction, in our view, would compromise the appearance if not the reality of fairness in a criminal prosecution and would weaken to a significant degree public trust and confidence in the criminal justice system. We hold, therefore, that a prospective juror who is related within the third degree by blood, adoption, or marriage to a deputy district attorney presently serving on the staff of the elected district attorney responsible for the criminal prosecution is related to an "attorney of record" for purposes of a challenge for cause under section 16-10-103(1)(b).[10]

### D.

■ In the instant case, the five-count criminal complaint was initiated by "Donald E. Mielke, District Attorney in and for the First Judicial District of the State of Colorado in the name and by the authority of the People of the State of Colorado" and was signed by a deputy district attorney acting for and on behalf of the district attorney. By so initiating criminal prose-

cution, the district attorney entered an appearance not only in his own name but on behalf of his prosecutorial staff, including the assistant district attorney, the chief deputy district attorney, and all deputy district attorneys. It follows, therefore, that each deputy district attorney on the district attorney's staff was, as of the commencement of the voir dire, an "attorney of record" for purposes of a challenge for cause made pursuant to section 16-10-103(1)(b). The trial court accordingly erred in denying the defendant's challenge for cause directed to Mrs. McNulty, who unequivocally acknowledged that she was the mother of a deputy district attorney then serving on the staff of the elected district attorney, Donald G. Mielke.

### III.

We turn now to consider the effect of the trial court's erroneous ruling on the challenge for cause. The People argue that the trial court's ruling, even if erroneous, does not constitute reversible error unless a defendant demonstrates that the ruling resulted in a biased jury. A resolution of the People's argument requires a consideration of the role played by the peremptory challenge in the criminal trial.

### A.

■ The peremptory challenge serves the purpose of providing both the defense and the prosecution with a greater opportunity to secure a balanced and impartial jury by rejecting "a limited number of prospective jurors without cause." *ABA Standards for Criminal Justice, Trial By Jury*, § 15-2.6, commentary at 62

---

**10.** The rationale supporting our holding applies also to lawyer members of the state public defender office. The state public defender is required to represent "each indigent person who is under arrest for or charged with committing a felony" if the defendant requests such representation or if the court, on its own motion or otherwise, appoints the state public defender and the defendant does not affirmatively reject the appointment. § 21-1-103(1), 8B C.R.S. (1986). Section 21-1-102(3), 8B C.R.S. (1986), authorizes the state public defender to employ a chief deputy public defender and deputy state

public defenders "necessary to discharge the functions of the office." In addition, section 21-1-102(4), 8B C.R.S. (1986), requires the state public defender to establish "such regional offices as he deems necessary to carry out the duties under this article." Because the chief deputy and deputy state public defenders act for and on behalf of the state public defender, the chief deputy and deputy public defenders would be "attorneys of record" for purposes of section 16-10-103(1)(b) in cases where the state public defender office is representing the accused.

(1986).[11] Although the peremptory challenge, by its very nature, will often be exercised for reasons personal to the challenger, the opportunity to exercise the challenge has been described as "one of the most important rights secured to an accused," the erroneous deprivation of which "must be condemned." *Pointer v. United States*, 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894). Section 16–10–104(1), 8A C.R.S. (1986), recognizes the significant role played by the peremptory challenge in a criminal case and states that "where there is one defendant and the punishment may be by imprisonment in the correctional facilities operated by the Department of Corrections, the state and the defendant shall each be entitled to five peremptory challenges."

Approximately eighty years ago this court in *Denver City Tramway Co. v. Kennedy*, 50 Colo. 418, 117 P. 167 (1911), a civil case, rejected the proposition that a trial court's erroneous denial of a challenge for cause results in reversible error only if the challenging party, who in that case exhausted all peremptory challenges, demonstrates that some other objectionable juror was permitted to serve on the jury by reason of the trial court's erroneous ruling. The *Kennedy* court reasoned as follows:

> [I]t could be just as consistently argued that a judgment should not be reversed where the court had limited the number of peremptory challenges to less than the number allowed by law, unless the complaining party could show some further injury occasioned to him thereby which could not usually be done in a case like the one under consideration. Here a right given the defendant by statute was denied. The injury complained of was the denial of a statutory right; that is the error the court committed, and that is the injury complained of, the result of which compelled the defendant to exhaust one of its peremptory challenges on this juror when it was entitled to have him excused without so doing; this left the defendant one less peremptory challenge to be used upon others.... Had the objection been sustained, the personnel of the jury would have been different. As to what effect this might or might not have had upon the ultimate result of the trial is a matter of pure conjecture, and is not for the trial court, or even this court, to make a guess at. When a privilege, which the legislature has seen fit to give to a party litigant, has been denied him and it is properly complained of on review and this court ascertains that such right was denied him, it has performed its duty. To go any further would be to add to the statute a matter which the legislature did not deem proper to incorporate in it and is to undertake judicial legislation, which the courts should be exceedingly careful to avoid.

50 Colo. at 422–23, 117 P. at 169.

The reasoning of *Kennedy* is unassailable and applies with even greater force to a felony prosecution where the stakes are considerably higher than those in the ordinary civil case. Indeed, this court acknowledged the soundness of *Kennedy*'s reasoning in *Harris v. People*, 113 Colo. 511, 520–21, 160 P.2d 372, 377 (1945), a criminal case, but concluded that the trial court's erroneous ruling on the challenge for cause was harmless because the defendant did not use a peremptory challenge to remove the suspect juror. More recently, in 1978, we decided *In the Interest of R.A.D.*, 196 Colo. 430, 586 P.2d 46, in which we reversed an adjudication of juvenile delinquency under circumstances very similar to those present here. In that case, the trial court denied the juvenile's causal challenge to a security guard employed by the State of Colorado at the Colorado Bureau of Investigation. The juvenile then excused the suspect juror by peremptory challenge and exhausted all other peremptory challenges. We held that the trial court erred in not excusing the challenged juror for cause as a compensated employee of a public law enforcement agency, pursuant to section

---

**11.** Peremptory challenges, of course, cannot be used to exclude otherwise qualified and unbiased prospective jurors solely by reason of the juror's race. *Powers v. Ohio*, —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

16-10-103(1)(k), 8A C.R.S. (1986), and that the trial court's error could not be deemed harmless:

> The appellant was deprived of his statutorily guaranteed number of peremptory challenges, for he was forced to employ one of them to excuse a juror who should have been excused for cause. Had the challenge been sustained, the composition of the jury would have been different. No one can tell what effect this might have had upon the trial's outcome and it is not for us to speculate.

196 Colo. at 433, 586 P.2d at 48. We followed that same approach in *Nailor v. People*, 200 Colo. 30, 612 P.2d 79 (Colo.1980), in which we somewhat summarily reversed a criminal conviction under circumstances where the trial court erroneously denied a challenge for cause and the defendant thereafter removed the suspect juror and exhausted all peremptory challenges. *Nailor* was followed and applied in *Morgan v. People*, 624 P.2d 1331 (Colo.1981), in reaching the same result. The rationale of these cases is that when a defendant is forced to utilize a peremptory challenge to correct a trial court's error in denying a challenge for cause, and thereafter exercises all available peremptory challenges on other prospective jurors, the effect of the trial court's erroneous ruling on the challenge for cause is to impair the defendant's ability to change the ultimate composition of the jury selected to try the case. We hold, therefore, that a trial court's erroneous ruling on a challenge for cause, which is followed by the defendant's use of a peremptory challenge to remove the suspect juror and the defendant's exhaustion of all available peremptory challenges, affects a substantial right of the defendant and cannot be deemed harmless error.[12]

### B.

We acknowledge some tension between our rejection of a harmless error analysis and our decision in *People v. Silvola*, 190 Colo. 363, 547 P.2d 1283 (1976). In *Silvola*, this court approved the following two-part test for appellate review of a trial court's erroneous ruling on a defendant's challenge for cause: "(1) Did the defendant exercise all of his peremptory challenges? and, (2) Was the defendant deprived of the

---

12. The People urge us to follow the analysis of *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), in resolving this case. We find the People's reliance on *Ross* to be misplaced. In *Ross*, which involved an Oklahoma capital trial for first degree murder, the Supreme Court held that the defendant's Sixth Amendment right to an impartial jury was not violated under circumstances where the trial court erroneously denied the defendant's motion to remove for cause a prospective juror and the defendant thereafter exercised all available peremptory challenges, including a peremptory challenge to remove the suspect juror. Under Oklahoma law, a trial court's erroneous ruling on a challenge for cause could be asserted as error only if the defendant exercised a peremptory challenge against the suspect juror, exhausted all available peremptory challenges, and further demonstrated that an incompetent juror was forced upon him. *Id.* at 89, 108 S.Ct. at 2278. In affirming the defendant's conviction and death sentence, the Court remarked that had the suspect juror sat on the jury or had the defendant established that any one of the twelve jurors who served on the case was not impartial, the death sentence would have to be overturned. *Id.* at 85–86, 108 S.Ct. at 2276–77. The Court, however, found no constitutional violation of the defendant's right to an impartial jury because "peremptory challenges are not of constitutional dimension," and "[s]o long as the

jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." *Id.* at 88, 108 S.Ct. at 2278.

The issue in *Ross*, which directly involved the accused's Sixth Amendment right to an impartial jury, required some showing that the jury ultimately selected to try the case was not impartial. In contrast to *Ross*, the issue in the instant case is not whether the jury selected to try the case was impartial in the constitutional sense of that term, but whether the trial court's erroneous ruling on a challenge for cause constituted harmless error or, instead, affected a substantial right of the defendant. *See* C.A.R. 35(e). Moreover, the Supreme Court decided *Ross* in the context of Oklahoma law which required a defendant to show that, in addition to removing the suspect juror and exhausting all available peremptory challenges, an incompetent juror actually served on the case. For reasons presently discussed in the text, we reject the Oklahoma rule that a defendant must demonstrate that, in addition to removing the suspect juror by peremptory challenge and exhausting available peremptory challenges on other jurors, a biased or otherwise incompetent juror was forced upon him.

right to challenge other prospective jurors because he was forced to exhaust his peremptory challenges to excuse the earlier suspect juror?". 190 Colo. at 368, 547 P.2d at 1288. The court, however, declined to rule on whether the trial court erred in denying the challenge for cause because the defendant, although having exhausted all available peremptory challenges including one directed to the suspect juror, "failed to allege or show that the second factor existed in this case." *Id.* at 368, 547 P.2d at 1288.

An analysis of the *Silvola* two-part test demonstrates that it is basically flawed. If *Silvola* is read to require a defendant to allege or show that some other juror, in addition to the suspect juror, was permitted to serve on the jury but should have been removed for cause, it would result in imposing an extremely onerous, if not impossible, burden on a defendant. Because the impaneled jurors already would have been passed for cause or would have survived a prior unsuccessful challenge for cause, it would be the rare case indeed that a defendant could ever establish that any of the impaneled jurors should have been removed for a reason not disclosed during the voir dire examination or, if disclosed during voir dire examination and made the basis of a challenge for cause, not deemed by the court as satisfying any of the statutory criteria for a causal challenge. To the extent that the second part of *Silvola* can be so read, *Silvola* is expressly overruled.[13]

If, on the other hand, the second part of the *Silvola* test is read to require a defen-

dant first to identify a prospective juror whom he would remove by an additional peremptory challenge, and then to state the reason why the prospective juror would be removed, the *Silvola* test adds nothing of legal significance to the prejudice calculus that was not already established by a defendant's compliance with the first part of the test. There are a number and variety of considerations that can enter into the decision to exercise a peremptory challenge against a prospective juror, and many of those considerations may be nothing more than feelings or hunches about a prospective juror. In our view, the reasons why a defendant might choose to excuse an impaneled juror by using an additional but unavailable peremptory challenge neither mitigate nor aggravate the damage already caused by the defendant's use of a peremptory challenge to remove a juror who should have been excused for cause and the defendant's exhaustion of all other available peremptory challenges on other prospective jurors.

A third reading of *Silvola* is also possible. *Silvola* possibly might be read to require a defendant to inform the trial court that if an additional peremptory challenge were to be granted, it would be used against any one of the prospective jurors. This requirement is also without legal significance, since the number of peremptory challenges is set by statute and is not a matter of judicial discretion. *See generally Blades v. DaFoe,* 704 P.2d 317, 321 (Colo.1985); *People v. Fink,* 41 Colo. App. 47, 49–50, 579 P.2d 659, 661 (1978).[14]

---

**13.** The court in *Silvola* relied on *Skeels v. People,* 145 Colo. 281, 358 P.2d 605 (1961), for the two-part test. In *Skeels* this court assumed that the trial court had erred in denying the defendant's challenge for cause, but found no error because the defendant failed to exhaust all of his peremptory challenges and did not show "that he was deprived of the right to challenge any other prospective juror ·because he was forced to exhaust his peremptory challenges to excuse the particular juror who had thus expressed himself" in the form of his opinion about the case. 145 Colo. at 287, 358 P.2d at 608. The court in *Skeels* concluded that "there could be no prejudice to the rights of defendant resulting from the denial of [the challenge for cause]." *Id.* In overruling *Silvola,* we also

overrule *Skeels* insofar as *Skeels* might be read to require a defendant to make a particular showing that, in addition to exhausting all available peremptory challenges and removing the suspect juror by peremptory challenge, he was prejudiced by being deprived of the right to challenge some other prospective juror. The prejudice, as already discussed, is the impairment of the defendant's statutory right to change the composition of the jury selected to try the case by reason of being forced to use a peremptory challenge to remove the suspect juror whom the trial court refused to excuse for cause and by using all other available peremptory challenges on other prospective jurors.

**14.** We acknowledge that in *People v. Botham,* 629 P.2d 589, 596 (Colo.1981), we mentioned

The most that such requirement might do is to provide the trial court with an opportunity to correct its erroneous ruling on the challenge for cause. A trial court, however, has the power to correct a prior erroneous ruling upon its own motion with or without any request to do so by the defendant. As in the case of the prior reading of *Silvola,* we fail to see how this additional requirement would add to or detract from the prejudice already established by the cumulative effect of the trial court's ruling on the challenge for cause, the defendant's use of a peremptory challenge to excuse the suspect juror, and the defendant's exhaustion of all available peremptory challenges authorized by statute.[15]

### C.

In the instant case, the record demonstrates that the trial court erred in denying the defendant's challenge for cause to one of the prospective jurors, that the defendant was required to exercise a peremptory challenge in order to remove the suspect juror, that the defendant exhausted all available peremptory challenges on other jurors, and that the defendant was deprived of an important statutory right to use another peremptory challenge for the purpose of changing the composition of the jury ultimately selected to try the case.

We are satisfied that the record adequately demonstrates that the defendant was adversely affected by the trial court's erroneous ruling on the challenge for cause and that the trial court's error cannot be deemed harmless.

The judgment of the court of appeals is accordingly affirmed.

---

several possible measures that a trial court might take to ensure a fair trial in the face of massive pretrial publicity. Included in those measures was the enlargement of the number of peremptory challenges. Our discussion of remedial measures in *Botham* was in the context of resolving the trial court's denial of the defendant's motion for a change of venue and was not intended as anything other than a passing reference to various possibilities which might accommodate the competing interests of free press and fair trial. In light of our holding in *Blades v. DaFoe,* 704 P.2d 317, 321 (Colo.1985), that a trial court commits reversible error in granting peremptory challenges in excess of the number prescribed by C.R.C.P. 47(h), a stronger case can be made for precluding the enlargement of the number of peremptory challenges in a criminal case, since the number is established by statute.

**15.** One possibly could read the second part of the *Silvola* test simply to mean that a defendant must show only that he was deprived of the right to challenge the prospective jurors by rea-

son of the use of a peremptory challenge to excuse the earlier suspect juror who should have been removed for cause. A defendant would satisfy that showing by removing the suspect juror by peremptory challenge, and by exhausting all peremptory challenges on other jurors, since those actions demonstrate that the defendant was impaired in his ability to change the composition of the jury by being placed in the position of using a peremptory challenge against the prospective juror whom the trial court should have removed for cause but did not. The facts in *Silvola,* however, belie this reading. The defendant in *Silvola* satisfied the first part of the test by using a peremptory challenge against the suspect juror and by exhausting all available peremptory challenges. It seems, therefore, that the *Silvola* opinion intended the second part of the test to require some allegation or demonstration by the defendant that he would expend an additional peremptory challenge on a specific juror who either was biased or was challengeable for cause on some other ground. For reasons discussed in the text, we reject that requirement.