2014 COA 89

**Jose MORALES–GUEVARA,**
**Plaintiff–Appellant,**

**v.**

**Claire A. KOREN, Defendant–Appellee.**

**Court of Appeals No. 13CA1092**

Colorado Court of Appeals,
Div. I.

Announced July 3, 2014

---

* Sitting by assignment of the Chief Justice under
provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2013.

Darling Milligan Smith & Lesch, PC, Richard J. Lesch, Jason B. Wesoky, Denver, Colorado, for Plaintiff–Appellant

Lewis Brisbois Bisgaard & Smith, LLP, Robyn Berger Averbach, Ryan C. Gill, Denver, Colorado, for Defendant–Appellee

Opinion by JUDGE ROY *

¶ 1 The plaintiff, Jose Morales–Guevara, appeals from a judgment entered on a jury verdict against the defendant, Claire A. Koren, awarding him damages for injuries sustained in a motor vehicle accident which, according to him, were considerably less than

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

the evidence supported. We reverse and remand for a new trial.

## I. Background

¶ 2 At trial, the defendant did not dispute that she caused the motor vehicle accident by driving while intoxicated. However, damages were in dispute. In particular, the defendant challenged the plaintiff's claim that the accident was the cause of a heart attack he suffered two months later. ·

· ¶ 3 During voir dire, there was an exchange between the plaintiff's counsel and a prospective juror concerning whether she could properly apply the burden of proof to the issue of the causation of the heart attack. After receiving a negative response from the prospective juror, the plaintiff challenged her for cause on the ground that she would not properly apply the preponderance of the evidence standard as to the causation of the heart attack. · · Neither the defendant nor the trial court attempted to rehabilitate the prospective juror. The trial court denied the challenge, the plaintiff removed the juror using a peremptory challenge, and the plaintiff then exhausted his remaining peremptory challenges.

## II. Issues

· ¶ 4 The only issues presented on appeal are: (1) whether the trial court abused its discretion in denying the plaintiff's challenge for cause to the prospective juror, and, if so; (2) whether the "automatic reversal rule" initially announced in *Denver City Tramway Co. v. Kennedy,* 50 Colo. 418, 117 P. 167 (1911), a civil case, remains binding on us after our supreme court's recent opinion in *People v. Novotny,* 2014 CO 18, 320 P.3d 1194, a criminal case.

¶ 5 The automatic reversal rule provides that when a trial court improvidently denies a challenge for cause to a prospective juror and then, after exercising a peremptory challenge to that juror, a litigant exhausts his or her peremptory challenges, reversal is required without a showing of prejudice. § 24–51–1105, C.R.S.2013.

The resolution of this issue turns on whether our supreme court overruled *Denver City Tramway* and its progeny in *Novotny*.[1] We conclude that the trial court abused its discretion in denying the challenge for cause and the automatic reversal rule still applies in civil cases, thereby requiring reversal.

### III. Challenge for Cause

#### A. Standard of Review

¶ 6 "[A] juror who harbors enmity against or bias in favor of either party may be challenged for cause." *Blades v. DaFoe*, 704 P.2d 317, 323 (Colo.1985) (citing C.R.C.P. 47(e)(7)). A trial court should grant a challenge for cause if "there is sufficient reason to question [the] prospective juror's ability to act as an impartial fact finder." *Pyles–Knutzen v. Bd. of Cnty. Comm'rs*, 781 P.2d 164, 166 (Colo.App.1989) (trial court properly excused prospective juror who stated he was biased against people who bring lawsuits). We review the trial court's ruling on a challenge for cause for an abuse of discretion. *Blades*, 704 P.2d at 323.

¶ 7 A prospective juror's statements must be evaluated in light of the entire voir dire. *Id.* at 324. "Moreover, while individual factors considered separately may not require that a challenge for cause be granted, the combination of factors may compel dismissal of the juror." *Id.* (citing *People v. Reddick*, 44 Colo.App. 278, 610 P.2d 1359 (1980)).

#### B. Discussion

¶ 8 Here, after the trial court twice explained the preponderance-of-the-evidence burden of proof, the following colloquy occurred:

[PLAINTIFF'S COUNSEL]: Does anybody here have any problem following the judge's instructions that we prove that the heart attack [was] just slightly more likely caused by the crash than something else? By show of hands, who would have difficulty even just a little rendering a verdict in our favor in that case? Yes, [prospective juror]?

[PROSPECTIVE JUROR]: In a case like that where it is—where it could be totally—[inaudible]—

[PLAINTIFF'S COUNSEL]: I'm sorry, I think you said it would have to ... be totally proven?

[PROSPECTIVE JUROR]: Prove that it happened two months later—[inaudible]. Have a hard time saying, Oh, you are kind of more right or—

[PLAINTIFF'S COUNSEL]: If we prove in your words kind of more right that the heart attack was caused by the crash, would you be able to find that the heart attack was caused by the crash in our favor?

[PROSPECTIVE JUROR]: No.

[PLAINTIFF'S COUNSEL]: Okay. Sounds like a pretty strong opinion, is there anything I could say that would change your opinion? Probably not.

[PROSPECTIVE JUROR]: If he was like okay, this doctor has five notes that say it probably wasn't but we have six, I don't know.

¶ 9 The trial court found that the prospective juror indicated she would be able to follow the law. However, that finding is not supported by the record. The prospective juror never stated that she would follow the court's instruction regarding the preponderance-of-the-evidence burden of proof. Rather, she stated she would *not* find in the plaintiff's favor if he met that burden. When the plaintiff's counsel asked if anything he said could change her mind, she stated, "I don't know." Neither the trial court nor the defendant's counsel attempted to rehabilitate the prospective juror following this exchange.

---

1. We note that our supreme court has granted certiorari review in *Roberts v. L & H, LLC*, (Colo. App. No. 11CA1851, 2013 WL 831763, Mar. 7, 2013) (not published pursuant to C.A.R. 35(f)). In *Roberts*, a pre-*Novotny* case, a division of this court reversed a defense verdict in a premises liability and negligence action under the automatic reversal rule, relying on *Blades v. DaFoe*, 704 P.2d 317 (Colo.1985). The order granting review states that the issue on review is "[w]hether the automatic reversal rule in civil jury trials announced in [*Blades* ] should be overruled." *Laura A. Newman, LLC v. Roberts*, No. 13SC 0339, 2014 WL 1464775, at *1 (Colo. Apr. 14, 2014).

¶10 We reject the defendant's contention that the prospective juror indicated her ability to follow the trial court's instructions by remaining silent when the trial court asked the venire at the commencement of the voir dire whether any of them could not do so. When a prospective juror has expressed an unwillingness to follow the law, his or her silence in response to questions posed to the venire is insufficient to rehabilitate previous problematic statements. *See People v. Clemens*, 2013 COA 162, ¶¶ 21–31, —— P.3d ——. And here, the prospective juror's problematic statements were made *after* the trial court's general questioning of the venire and were the prospective juror's last statements on the matter.

¶11 Because the prospective juror made no affirmative assurance that she would follow the court's instructions after expressing unwillingness to do so, she should have been excused from the jury. We therefore conclude that the trial court abused its discretion by denying the plaintiff's challenge for cause.

## IV. Automatic Reversal Rule

### A. Applicable Law

¶12 The cases most central to a discussion of the automatic reversal rule are, in chronological order: *Denver City Tramway*; *Blades*; *People v. Macrander*, 828 P.2d 234 (Colo.1992); and *Novotny*.

#### 1. *Denver City Tramway*

¶13 In *Denver City Tramway*, the plaintiff brought a negligence action based on personal injuries. The plaintiff challenged a juror for cause based on a statute which permitted a challenge to a juror who had served "at any prior term [of court] within a year next preceding [the present proceeding]." 50 Colo. at 421, 117 P. at 168; ch. 116, sec. 1, 1905 Colo. Sess. Laws 280. The trial court denied the challenge, and the plaintiff exhausted his peremptory challenges, having used one to discharge the challenged juror. Our supreme court concluded that the trial court erred in denying the challenge for cause and reversed and remanded the case for a new trial, stating:

The challenge here was a statutory one. The court did not attempt to exercise any discretion, but held, from the facts disclosed, that the juror did not come within its provisions so as to make him subject to challenge for the reasons stated in the act. In this the trial court erred, and it could be just as consistently argued that a judgment should not be reversed where the court had limited the number of peremptory challenges to less than the number allowed by law, unless the complaining party could show some further injury occasioned to him thereby which could not usually be done in a case like the one under consideration. Here a right given the defendant by statute was denied. The injury complained of was the denial of a statutory right. That is the error the court committed, and that is the injury complained of, the result of which compelled the defendant to exhaust one of its peremptory challenges on this juror when it was entitled to have him excused without so doing. This left the defendant one less peremptory challenge to be used upon others. The evidence was conflicting. Had the objection been sustained, the personnel of the jury would have been different. As to what effect this might or might not have had upon the ultimate result of the trial is a matter of pure conjecture and is not for the trial court, or even this court, to make a guess at. When a privilege, which the Legislature has seen fit to give to a party litigant, has been denied him, and it is properly complained of on review, and this court ascertains that such right was denied him, it has performed its duty. To go any further would be to add to the statute a matter which the Legislature did not deem proper to incorporate in it and is to undertake judicial legislation, which the courts should be exceedingly careful to avoid.

50 Colo. at 422–23, 117 P. at 169.

#### 2. *Blades*

¶14 In *Blades*, the plaintiff brought a professional negligence claim against two physicians, and the jury returned a defense verdict. The trial court, misapplying C.R.C.P. 47(h), granted each party four peremptory

challenges, resulting in the plaintiff having four and the defendants, collectively, eight.[2]

¶ 15 Our supreme court reversed and remanded for a new trial and, in discussing the reversible error rule, stated in pertinent part:

> Several considerations persuade us to adopt the reversible error rule. As discussed [above], the allocation of peremptory challenges is dictated by C.R.C.P. 47(h) and does not depend on the exercise of judicial discretion. Therefore, imposing the burden of proof on the party adversely affected to establish actual prejudice would nullify the requirements of the rule governing the allocation of peremptory challenges. "To show actual prejudice, the complaining litigant would be required to discover the unknowable and to reconstruct what might have been and never was, a jury properly constituted after running the gauntlet of challenge[s] performed in accordance with the prescribed rule[s] of the game." *Kentucky Farm Bureau Mutual Insurance Co. v. Cook,* 590 S.W.2d 875, 877 (Ky.1979).
>
> In addition, it is the policy of the law to look with disfavor on any attempt to invade the jury's internal processes of decision making in order to obtain evidence necessary to impeach verdicts, except in relatively rare cases. *See* CRE 606(b). Finally, the side with the greater number of peremptory challenges clearly has a tactical advantage because it will have the power to select a jury presumably balanced in its favor by challenging a greater number of jurors.
>
> ....
>
> Our adoption of the reversible error rule in civil cases is consistent with this court's decision in *Bustamante v. People,* 133 Colo. 497, 500, 297 P.2d 538, 540 (1956), where we held that the trial court erred in granting the prosecution's challenge for

cause because the result of the ruling gave the prosecution an additional peremptory challenge which "affected or could have affected the substantial rights of the defendant."

*Blades,* 704 P.2d at 321–22 (some citations omitted).

### 3. *Macrander*

¶ 16 *Macrander* dealt with a challenge for cause under section 16–10–103(1)(b), C.R.S. 2013, which provides that the court shall sustain a challenge for cause on the ground that the prospective juror is related "within the third degree, by blood, adoption, or marriage, to a defendant or to any attorney of record or attorney engaged in the trial of the case." The prospective juror's son was a deputy district attorney serving in the district attorney's office which had brought and tried the charges against the defendant. The trial court denied the challenge; the defendant removed the prospective juror with a peremptory challenge and exhausted his available peremptory challenges.

¶ 17 On appeal, the threshold inquiry was whether the prospective juror's son was "an attorney of record engaged in the trial of the case." After concluding he was, our supreme court held that the granting of the challenge for cause was mandatory, not discretionary, and reversed and remanded the case for a new trial relying on, and quoting from, *Denver City Tramway,* as we have quoted above.

### 4. *Novotny*

¶ 18 Finally, in *Novotny,* the defendant challenged for cause an assistant attorney general pursuant to section 16–10–103(1)(k), which provides that the court shall sustain a challenge for cause to a "[prospective] juror [who] is a compensated employee of a public law enforcement agency or a public defender's office."[3]

---

**2.** C.R.C.P. 47(h) provides: "Peremptory Challenges. Each side shall be entitled to four peremptory challenges, and if there is more than one party to a side they must join in such challenges. Additional peremptory challenges in such number as the court may see fit may be allowed to parties appearing in the action either under Rule 14 or Rule 24 if the trial court in its

discretion determines that the ends of justice so require."

**3.** We note that in three of these cases, *Denver City Tramway, Macrander,* and *Novotny,* the trial court misapplied a clear and unambiguous provision of an applicable statute or rule requiring that the challenge be sustained and reversal of

¶ 19 After concluding that a deputy attorney general is a compensated employee of a public law enforcement agency and that sustaining the challenge for cause was mandatory, not discretionary, the majority concluded that review "for harmless error under the proper outcome-determinative test" was the appropriate response to the error. *Novotny,* ¶ 27.

¶ 20 The court in *Novotny* departed from the rationale of *Denver City Tramway, Blades,* and *Macrander* and analyzed structural and harmless error. Essentially, the court reasoned that: (1) structural error, which requires automatic reversal, is limited to a class of fundamental constitutional errors which could defy analysis under harmless error standards; (2) the loss of a peremptory challenge is not of constitutional dimension; and, therefore, (3) automatic reversal is not required and non-constitutional harmless error analysis applies.[4] While the analysis is detailed and extensive, it can, for our purposes, be summarized by the following paragraphs from the opinion:

Regardless of the merits of our reasoning in *Macrander* and [*People v. Lefebre,* 5 P.3d 295 (Colo.2000)] at the time, both federal and state law governing harmless error review in general, and the constitutional significance of peremptory challenges in particular, have developed so as to substantially erode the premises upon which those decisions rest, making their continued viability untenable. With regard to harmless error review, the jurisprudence of both this court and the United States Supreme Court distinguishing trial from structural error and defining "substantial rights" has evolved to the point of

sanctioning reversal for trial error *only* when that remedy is dictated by an appropriate outcome-specific analysis. With regard to the constitutional implications of depriving a criminal defendant of state-granted rights to shape the jury through peremptory challenges, the United States Supreme Court has now expressly rejected the understanding we, and a substantial number of other jurisdictions, had of the federal due process implications of [*Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988)]. *See Rivera v. Illinois,* .556 U.S. 148, 157, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009) ("If a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern.").

The evolving decision to treat some kinds of error as harmless has been termed "'the most far-reaching doctrinal change in American procedural jurisprudence since its inception.'" Wayne R. LaFave et al., *Criminal Procedure* § 27.6(a) (3d ed.2013) (quoting Childress & Davis, *Federal* Standards of Review § 7.01 (2d ed.1986)). Dominated at least as much by policy concerns as any consistent legal theory, the application of a harmless error rule has undergone substantial alter[ ]ations, or refinements, in the jurisprudence of both this court and the United States Supreme Court. *See generally id.* § 27.6(b) ("Few areas of doctrinal development have been marked by greater twisting and turning than the development of standards for applying the harmless error

the judgment on appeal. The fourth, *Blades,* involves the trial court misinterpreting or misapplying the unambiguous language of the governing rule, again requiring reversal. This distinction, while interesting, does not govern the analysis here. We are aware of a large number of unpublished opinions of this court applying *Macrander* in which the challenges for cause were addressed to the discretion of the trial court. There were approximately twenty-five such cases pending in our supreme court when *Novotny* was announced.

Further, while little was said about the challenges for cause on appeal in the companion case in *Novotny, People v. Vigil,* (Colo.App. No.

08CA1748, 2011 WL 1849617, May 12, 2011) (not published pursuant to C.A.R. 35(f)), the defendant's argument in that .case was that by erroneously sustaining two of the prosecution's challenges for cause, the trial 'court effectively permitted the prosecution to exercise two more peremptory challenges than permitted by statute. *Novotny,* 2014 CO 18, ¶ 5, 320 P.3d 1194.

4. Justice Hood, joined by Justice Hobbs, dissented with respect to the abandonment of the automatic reversal rule concluding, in part, that the error defies harmless error analysis. *Novotny,* ¶¶ 43–49 (Hood, J., concurring in part and dissenting in part).

rule. Its history has been described as one 'of innovation and regression, of instability and uncertainty,' that cannot be explained in terms of any 'evolving progression of jurisprudential theories.'" (quoting Stephen A. Saltzburg, *The Harm of Harmless Error*, 59 Va, L.Rev. 988, 998 (1973))). By the time of our finding of "inherent prejudice" in *Macrander*, the mandate of Crim. P. 52(a) and C.A.R. 35(e) to disregard any error or defect not affecting substantial rights was already well-accepted, but the more precise distinction between trial error, which can be harmless, and structural error, which cannot, was yet in its infancy. *See Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (trial errors are compatible with harmless error analysis; structural errors are not); *see also Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (some constitutional errors may be deemed harmless).

*Id.* at ¶¶ 17, 18.

¶ 21 At the conclusion of the opinion, the court stated:

> [W]e overrule our prior holdings to the contrary and conclude that reversal of a *criminal conviction* for other than structural error, in the absence of express legislative mandate or an appropriate case specific, outcome-determinative analysis, can no longer be sustained; and further, that allowing a defendant fewer peremptory challenges than authorized, or than available to and exercised by the prosecution, does not, in and of itself, amount to structural error.

*Id.* at ¶ 27 (emphasis added).

### B. Analysis

¶ 22 We conclude that *Novotny* did not overrule *Denver City Tramway* or *Blades*.[5]

¶ 23 It is apparent that our supreme court did not explicitly overrule *Denver City Tramway* or *Blades*. The language in *Novotny*, immediately above-quoted, clearly limits the cases being explicitly overruled to those arising in the criminal law context.

¶ 24 Nor are we persuaded that *Novotny* implicitly overruled *Denver City Tramway* or *Blades*.

■ ¶ 25 First, the analysis in *Novotny* turned principally on relatively recent decisions narrowing the structural error analysis in criminal cases. Structural error is not a civil law standard of review. *See People in Interest of R.D.*, 2012 COA 35, 277 P.3d 889, 895.

¶ 26 Second, *Novotny* can be reconciled with *Denver City Tramway* and *Blades* because they arose in different contexts. *Novotny* arose in the criminal law context which is governed by section 16–10–103, whereas *Denver City Tramway* and *Blades* arose in the civil context which is governed by C.R.C.P. 47(h).

¶ 27 Third, while our supreme court mentions *Denver City Tramway* in the *Novotny* opinion, it does so only in tracing the historical underpinnings of *Macrander*; it does not criticize the rationale and holding in *Denver City Tramway*.

¶ 28 Fourth, the court in *Novotny* emphasized that only the supreme court "can overrule [its] prior precedents concerning matters of law." *Novotny*, ¶ 26. The court quoted the following passage from *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989): "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."

¶ 29 Thus, in our view, *Denver City Tramway* and *Blades* remain the controlling and binding authority on the application of the automatic reversal rule in the civil context.

¶ 30 We are certainly aware that continuing to follow *Denver City Tramway* and *Blades* in the civil context creates an incon-

---

5. We are cognizant that the Synopsis and Holdings discussion summarizing the opinion in *Novotny*, which is authored by the Colorado Bar Association; the Westlaw headnote five to the *Novotny* decision; and red flagging of *Denver City Tramway* by Westlaw all indicate *Denver City Tramway* was overruled by *Novotny*. We disagree.

gruity in the law and that incongruities are disfavored. That is, the peremptory challenge is better protected in the civil context than it is in the criminal context. This may well be the reason our supreme court granted review in *Roberts v. L & H, LLC,* (Colo. App. No. 11CA1851, 2013 WL 831763, Mar. 7, 2013) (not published pursuant to C.A.R. 35(f)), almost immediately after announcing *Novotny.*

## V. Conclusion

¶ 31 The judgment is reversed and the case is remanded for a new trial.

Judge TAUBMAN and Judge NAVARRO concur.